# MINERS AND MERCHANTS BANK OF LONACON-ING *vs.* WALTER SNYDER.

*Constitutional Law—Changing the Remedy Without Impairing the Obligation of the Contract—Statute Changing Mode of Enforcing Liability of Stockholders to Creditors of Trust Companies.*

A statute which modifies or changes the method of procedure in the Courts for the enforcement of an existing contractual obligation is valid and constitutional, provided the change does not impair any of the substantial rights secured by the contract, and leaves or provides a reasonably effective remedy for their enforcement.

Under the law as it stood at the time this action was brought against a stockholder by a creditor of a trust company, each stockholder was liable to the creditors of the corporation for double the amount of the par value of the stock held by him. This liability was enforceable directly against the stockholders by the creditors themselves and not by the receiver of the corporation, and it was a race of diligence between creditors as to which might first obtain judgments against any particular stockholder and the latter could confess judgment in behalf of a chosen creditor. While such action against the defendant was pending, but before judgment therein, the Act of 1904, ch. 337, was passed and provided that the exclusive remedy of creditors to enforce the statutory liability of stockholders of trust companies shall be by a bill in equity on behalf of all the creditors against all the stockholders, and that pending actions at law against such stockholders should be abated. *Held*, that the Act of 1904 does not diminish the liability of the stockholders, nor change the persons to whom they are liable, but merely alters the remedy by which their liability is enforceable, without any postponement thereof; that the institution of the action in this case did not give the plaintiff a vested right to that particular remedy; that the suit in equity by the creditors themselves and not by a receiver is equally as effective as an action at law and saves the creditors from the risk of loss involved in a struggle between them as competitors in separate actions at law, and that since the Act of 1904 provides a reasonable and effective mode of enforcing the rights of creditors it is not unconstitutional, since it does not impair the obligation of the contract.

Appeal from the Court of Common Pleas.

The cause was argued before McSHERRY, C. J., FOWLER, BOYD and SCHMUCKER, JJ.

*Vernon Cook* and *W. Calvin Chesnut* (with whom were *Gans & Haman* on the brief), for the appellant.

The liability of the stockholder to the creditor is contractual and not penal. *Norris* v. *Wrenschall*, 34 Md. 492; *Colton* v. *Mayer*, 90 Md. 716.

The liability of the stockholders to the creditors is a primary obligation, that is, it is not necessary for the stockholder to exhaust his rights against the corporation before suing the stockholder. *Hager* v. *Cleveland*, 36 Md. 476, 480, 493; *Norris* v. *Wrenschall*, 34 Md. 492, 499; *Fiery* v. *Emmert*, 36 Md. 464, 474; *Garling* v. *Bechtel*, 41 Md. 305, 326; *Colton* v. *Mayer*, 90 Md. 711; *Clark & Marshall on Corporations*, vol. 3, sec. 814.

An individual creditor may sue an individual stockholder at law. *Norris* v. *Johnson*, 34 Md. 485; *Hammond* v. *Straus*, 53 Md. 110.

The stockholders' liability is not a fund for the *pro rata* benefit of all creditors; but the stockholders are liable to only those creditors to whom debts were contracted by the corporation while they were stockholders. *Weber* v. *Fickey*, 47 Md. 196; *Colton* v. *Mayer*, 90 Md. 711.

What does the Act of 1904, ch. 337, grant to the plaintiff in exchange for this valuable right which it assumes to take away? It merely undertakes to give a plaintiff the right to join in a *creditor's bill, on behalf of all creditors, against all stockholders*, with the saving, under certain conditions, of the running of the Statute of Limitations against his claim and a right to have the costs in his law suit taxed as a part of the costs in the equity suit. If the corporation which is indebted to the plaintiff is greatly insolvent, it may very well be that the amount of debts owing from the company to its creditors would be so great that the total liability of all the stockholders, even assuming that all are solvent, together with the whole assets of the corporation, will not be sufficient to pay the creditors in full. Such is not disputed to be the fact in this case. By the effect of the Act, the defendant's liability is no longer to the *plaintiff individually*, but to the

*whole number of creditors* who are entitled to payment from him *pro rata.* In other words, the plaintiff's *individual* and *absolute right in severalty* to the defendant's contribution is changed into a right *in common with other* creditors of the company, and is limited to a *pro rata* proportion of the defendant's contribution.

The plaintiff's total claim against the City Trust and Banking Company represented about one-fifth of its whole indebtedness. If the Act is valid, the plaintiff's right to recover $3,000 from the defendant is abolished and instead thereof he can recover only one-fifth thereof, or $600. It needs no further comment to show that under this Act substantial money rights are taken away from the plaintiff.

To summarize, the Act assumes to make the following changes in the prior existing law :

(*a*) The remedy by individual suit at law is abolished, and on the eve of obtaining a judgment the plaintiff's suit is abated and he must begin or join in a creditor's suit with numerous parties and consequent delay and costs. His remedy is thereby substantially *impeded.*

(*b*) The plaintiff's absolute right to the defendant's whole liability is changed to a right in common with other stockholders. The right itself is changed and substantially impaired.

(*c*) Under the law prior to the Act there was no common fund for equitable distribution, but some stockholders were liable to some creditors and not to others. Some stockholders might not be liable to any creditors. Other stockholders might be liable to all creditors. Some creditors might be entitled to recover from solvent stockholders; other creditors from only insolvent stockholders. It all depended upon when the debts were contracted by the corporation. But the Act seems to contemplate an equitable or *pro rata* distribution of the liability of all the stockholders among all the creditors. Such is the scheme in other States where the remedy in equity is exclusive. And it is difficult to see how any other scheme could be carried out in equity. *Colton* v. *Mayer*, 90 Md. 711.

If this is the case, then the contract is impaired not only from the standpoint of the creditor, but also from that of the stockholder.

(*d*) *Stockholder's right of set-off.* Under the procedure before the Act the stockholder could set-off against the creditor a claim against the corporation. *Cahill* v. *Original Big Gun Assoc.*, 94 Md. 353. But under the decision and reasoning of this last case it is very difficult to see how this right of set-off could be allowed in the equity suit. If not, this again impairs the contract rights of the stockholder.

It is to be noted that the Act, although nominally prospective as well as retrospective, operates really only retrospectively, because by ch. 101 of the Acts of 1904, sec. 85L of Art. 23, the basis of liability, is repealed and re-enacted, so that in the future the stockholders liability becomes an asset of the insolvent corporation, enforceable only by the receiver, assignee or trustee, and no longer gives any rights to the creditors except through the receiver. The last-mentioned Act expressly provides that it shall not affect the rights or remedies of any creditors under the existing laws of the State against the stockholders, who are liable to the creditors at the date of the passage of the Act. Chapter 337 provides that the exclusive remedy for the enforcement against stockholders by creditors of all rights existing under sec. 85L shall be by bill in equity. But, as we see from ch. 101, no such creditors' rights exist except such as had accrued prior to the passage of ch. 337. The latter chapter, therefore, could operate only retrospectively. It is evident therefore, that it was not passed for the purpose of effecting a desired change in the future, but for the special object of affecting a then present situation, which had grown out of past events.

It is a matter of common knowledge that the particular situation aimed at by this Act of the Legislature grew out of the failure of two trust companies in Baltimore City—the City Trust and Banking Company and the Maryland Trust Company. A large number of suits at law had been instituted by some diligent creditors of these two companies against the

stockholders, and the Act was evidently designed to cut up these suits by the roots. No suit under the statute now involved had been instituted prior to January 1st, 1903, and no other trust company in the State had failed at the time of the passage of the Act. The law is, therefore, evidently not designed to be one of general prospective operation, but to operate retrospectively as against these particular cases. We think the Court is quite justified, and ought to apply strictly the constitutional provision against an Act of this character, and we also say that the decisions of this Court and of the United States Supreme Court, and other Federal Courts, furnish ample authority for the proposition contended for by us.

It is, of course, not to be denied that a law which undertakes to entirely repeal a liability of this character impairs the obligation of the contract and is unconstitutional. *Norris* v. *Wrenschall*, 34 Md. 492; *Hawthorne* v. *Calef*, 2 Wall. (U. S.) 10; *McDonnell* v. *Ala. Gold, &c., Co.*, 85 Ala. 401; *Provident* v. *Jackson Place, &c.*, 52 Mo. 552; *Conant* v. *Van Schaick*, 24 Barb. (N. Y.) 87.

But the appellee contends that the liability is not repealed nor the contract itself affected, but merely the remedy changed. We answer that under the guise of affecting the remedy, the act really impairs the contract itself. *Baugher* v. *Nelson*, 9 Gill; *Garrison* v. *Hill*, 81 Md. 566. Not every change of remedy is valid. *State* v. *Jones*, 21 Md. 433–437; *Seibert* v. *U. S.*, 122 U. S. 284; *Walker* v. *Whitehead*, 16 Wall. 317; *McGahey* v. *Va.*, 135 U. S. 662; *Bradley* v. *Lightcap*, 195 U. S. 1.

The alternative remedy given by such a statute must then be equally adequate and efficacious. We say that the Act of 1904, in taking away the remedy at law and allowing thereafter only the remedy in equity by a bill on behalf of all creditors against all stockholders is not *equally adequate and efficacious.* Colton v. *Mayer*, 90 Md. 714; *Woodworth* v. *Bowles*, 61 Kan. 569; *Dexter* v. *Edwards*, 89 Fed 467; *Bank* v. *Reckless*, 96 Fed. 70; *Webster* v. *Bowers*, 104 Fed. 627.

*William S. Bryan, Jr.*, (with whom were *N. Rufus Gill & Sons* on the brief), for the appellee.

If the form of remedy theretofore existing had been a vested right of the creditors of the insolvent corporation, then, it might be conceded that this ch. 337 of the Acts of 1904 would have been void, as impairing the obligation of a contract in contravention of Art. 1, sec. 10 of the Federal Constitution, and also as taking from the creditors, arbitrarily and without due process of law, the property (*i. e.*, the right of action) of these same creditors in contravention of sec. 1 of the Fourteenth Amendment of the Federal Constitution, and also in contravention of Art. 23 of the Maryland Declaration of Rights.

But it is too well settled for debate that there can be no such thing as a vested right in a remedy; that the Legislature must at all times have the power to alter and modify, at will, the remedy for the enforcement of judicial rights, provided it leaves a possibly less convenient, but still reasonably effective remedy for the rights so affected. *Wilson* v. *Simon*, 91 Md. 1; *Bronson* v. *Kinzie*, 1 Howard (U. S.), 315, 316; *State, use of Isaac* v. *Jones*, 22 Md. 457; *Red River Valley Bank* v. *Craig*, 181 U. S. 548; *Cooley on Constitutional Limitations*, 442.

The rule that the Legislature of a State can change the *remedy* without impairing the obligation of the contract or disturbing the vested rights is well illustrated by the case of *Penniman Petitioner*, 11 Rhode Island, 333, affirmed in 103 U. S. 714.

A statute abolishing distress is not unconstitutional as to existing leases. *Conkey* v. *Hart*, 14 N. Y. 23, 29.

So of a statute withdrawing the privilege to recover costs in pending litigations. This privilege is held not to be even an essential part of the remedy. *Rader* v. *S. E. Road District*, 36 N. J. L. 273, 277.

So a statute exempting from execution, absolutely, the earnings of married men, earned within sixty days, affects the remedy only and does not impair the obligation of the contract. *Kirkman* v. *Bird*, 58 L. R. A. 669.

So of a statute transferring the right of action to enforce the statutory liability of stockholders from the creditors to trustees. *Story* v. *Furman*, 25 N. Y. 214, 223, 226.

As illustrations of other changes in the remedy, which very seriously impair the efficiency of such remedy, and are yet lawful, see *Cutts* v. *Hardee;* 38 Ga. 350; *Cook* v. *Gray*, 2 Houst. 455, 470: *Bird* v. *Keller*, 77 Maine, 270, 273.

See also as recognizing the Legislature's control over the remedy. *Baugher* v. *Nelson*, 9 Gill, 308; *State Savings Bank* v. *Matthews*, 123 Michigan, 56, 60; *Oshkosh Water Co.* v. *Oshkosh*, 109 Wisconsin, 208, 215; *Swann* v. *Mut. Res. F. Life Assn.*, 100 Fed. Rep., pp. 928, 929.

From another point of view, the power of the Legislature to mould at its pleasure the remedy in legal proceedings is illustrated by the case of *Hill* v. *Merchants Insurance Co.*, 134 U. S. 515, 527.

Of course decisions in those jurisdictions where the State Constitution guarantees to the creditor, not only that the obligation of the contract shall not be impaired, but that the remedy existing at the time the contract was made shall be preserved, are not in point. For example, paragraph 3 of sec. 7 of Art. 4 of the Constitution of New Jersey provides: "The Legislature shall not pass any bills of attainder, *ex post facto* law, or law impairing the obligations of contracts, *or depriving a party of any remedy for enforcing a contract which existed when the contract. was made."* As clearly pointed out by JUDGE GRAY in his judgment in *Western National Bank* v. *Reckless*, 96 Fed. Rep. 75, the framers of the New Jersey Constitution saw fit to go beyond the U. S. Constitution (which protected only the right) and to protect "beyond all cavil or doubt the remedy which existed at the time the contract was made for enforcing the same."

SCHMUCKER, J., delivered the opinion of the Court.

On September 5th, 1903, the appellant, as a creditor of The City Trust and Banking Company, sued the appellee at law to enforce his statutory liability as a stockholder of that com-

pany for its debts.    The defendant pleaded the general issue
and a number of special pleas to which the plaintiff demurred.
At the hearing of the demurrer the Court, looking to the first
error in the pleadings, held that since the passage of ch. 337
of the Acts of 1904, the case disclosed by the declaration
could no longer be maintained and sustained the demurrer as
to that pleading.    A judgment of dismissal was thereupon en-
tered in the case and from that the appeal was taken.    The
defenses set up by the special pleas were not passed upon by
the Court below nor is it necessary for us, in view of the con-
clusion which we have reached to notice them here.

The Act of 1904 took away the right theretofore existing
in every creditor of a trust company to bring a separate ac-
tion at law against any of its stockholders to enforce his statu-
tory liability for its debts, and substituted for such action the
exclusive remedy of a bill in equity on behalf of all the cred-
itors against all of the stockholders residing in this State, with
the privilege to non-resident stockholders to come into the
case and by so doing secure protection from suits against them
in other jurisdictions.    The Act by its terms was to become
operative as of January 1st, 1903, and to cause the abatement
of all pending actions at law instituted since that date against
stockholders to enforce such statutory liability; but the plain-
tiffs costs in the abated actions were to become part of the
costs taxable in the equity proceeding provided for by the Act,
if within sixty days after its passage such plaintiffs came into
that proceeding.

This appeal brings up the issue of the validity of that por-
tion of the Act in question which relates to actions at law
against stockholders instituted before its passage.    The appel-
lant contends that that portion of the Act is invalid, because
it attempts to impair the obligation of contracts in violation of
Art. 1, sec. 10 of the Federal Constitution.    It is admitted
that the Act does not operate directly upon the liability itself
of the stockholder or attempt to change the persons to whom
it is due, but it is insisted that the alteration made in the form
of remedy for its enforcement is such as to substantially im-

pair the value of his liability to the creditor for the corporate debts.

It was held by the Supreme Court of the United States in *Hawthorne* v. *Calef*, 69 U. S. 10, that a State Act, attempting to repeal a clause in the charter of a bank making its stockholders liable to the extent of the par value of their stock to its creditors, was void as to debts of the bank contracted before the date of its passage because as to such debts it impaired the obligation of the contract with the creditors within the meaning of the Federal Constitution. On the other hand it was said by the same high tribunal in *Tennessee* v. *Sneed,* 96 U. S. 69: "Our own reports and those of the States are full of cases holding that the Legislature may alter and modify the remedy to enforce a contract without impairing its obligation * * * If a particular form of proceeding is prohibited and another is left or provided which affords an effective and reasonable mode of enforcing the right the contract is not impaired." Again in *Fourth Natl. Bank* v. *Francklyn*, 120 U. S. 747, the same Court, in construing a statute of Rhode Island modifying the remedy to be employed by the creditors of a corporation in enforcing an existing statutory liability of its stockholders for its debts, said. "As it (the statute) does not undertake to *annul* the *liability* of the stockholders for the debts of the corporation, but only modifies the form of remedy and the rules of evidence it is not doubted that it is a constitutional exercise of the power of the Legislature even as applied to debts contracted by the corporation before its enactment. *Hawthorne* v. *Calef*, 69 U. S. 10; *Penniman's case*, 103 U. S. 714; *Ogden* v. *Saunders*, 25 U. S. 213, 262, 349; *Webb* v. *Den*, 58 U. S. 576; *Curtis* v. *Whitney*, 80 U. S. 68; *Tennessee* v. *Sneed*, 96 U. S. 69." *Oshkosh Water Works case*, 187 U. S. 439.

The statute construed in *Fourth Natl. Bank* v. *Francklyn*, *supra*, was entitled "An Act defining and limiting the mode of enforcing the liability of stockholders for the debts of corporations; " and it provided that no person should be imprisoned or continued in prison or his property attached upon a judg-

ment against a corporation of which he was a stockholder. It further required an action of debt to be brought against the stockholder on the judgment against the corporation and allowed him to make the same defenses to that action that the corporation could have made to the suit against it in which the judgment was obtained. Prior to the passage of that Act the Rhode Island law permitted the person and property of the stockholder who was liable for the corporate debt to be taken on execution or attachment issued against the corporation for the debt.

The power of a State to modify or change the method of procedure in its own Courts for the enforcement of an existing contractual obligation so long as it does not thereby impair the substantial rights secured by the contract has frequently been upheld by this Court. *State, use of Isaac* v. *Jones*, 21 Md. 432; *Madigan* v. *Workingmen's Building Assn.*, 73 Md. 317; *Wilson* v. *Simon*, 91 Md. 1. In *Madigan's case*, it was held that such an Act would embrace within its operation actions pending at the date of its passage.

We will now consider, in the light of the principles thus announced, whether the Act of 1904, ch. 337, so affects the appellant's contractual rights as to fall within the constitutional inhibition.

Chapter 109 of the Acts of 1892, now sec. 85L of Art. 23 of the Code of Public General Laws, provides, in reference to trust companies, that "Each stockholder shall be liable to the depositors and creditors of any such corporation for double the amount of stock at the par value held by such stockholder in such corporation" but the Act is silent as to the form of remedy to be used or the tribunal to be resorted to for the enforcement of the liability. Section 14 of the Act of 1896, ch. 344, by which the appellant was incorporated, provides that "the said corporation shall be subject at all times to the provisions of the Act of 1892, ch. 109 and of ch. 279." Assuming but not now deciding because not necessary to this case that this clause in the appellant's charter imposed upon the holders of its stock the same liability to its creditors and

depositors that the general law imposed upon holders of the stock of trust companies organized under its provisions, let us see in what attitude the appellant stood toward the stockholders of the City Trust and Banking Company at the date of the passage of the Act of 1904. The question here reserved of the true effect of sec. 14 of ch. 344 of the Act of 1896 has been argued and will be decided in the case of *Murphy* v. *Wheatley*, hereinafter referred to.

The Act of 1892, ch. 109, which was then in force created the liability of the stockholders of a trust company for its debts. That particular Act has not heretofore been the subject of consideration by us but we have several times had occasion to construe provisions of the Code and special charters imposing a liability of like nature upon stockholders in manufacturing and other corporations. In those cases we determined that such liability does not constitute a corporate asset enforceable by a receiver of the corporation but it is a debt due directly by the stockholder to those persons who became creditors of the corporation while he held its stock. We further held that any such creditor could enforce the liability by a separate action against any stockholder from whom it was due and recover the debt from him to the extent of double the par value of the stock held by him at the time it was contracted. It was thus made possible for the creditor by the exercise of superior skill and diligence to secure payment in full of his debt from the stockholder sued by him to the exclusion of the other creditors. *Albert* v. *Matthews,* 24 Md. 535; *Norris* v. *Wrenschall,* 34 Md. 501; *Hammond* v. *Strauss,* 53 Md. 10; *Attrill* v. *Huntington,* 70 Md. 197; *Colton* v. *Mayer,* 90 Md. 717 and cases there cited.

It thus appears that prior to the passage of the Act of 1904, the appellant and all others, who became creditors of the City Trust and Banking Company while the appellee was one of its stockholders, had a right to recover their debts from him to the extent of $3,000, that being double the par value of his stock, but it was entirely problematical which creditor would succeed in enforcing that right for his own benefit or what

share of it if any the appellant would be able to realize for himself.    It is true that before the passage of the Act, the appellant had in the assertion of the right under consideration brought his suit at law against the appellee but he had obtained no judgment and was entitled to no lien nor had he any assurance that some other creditor would not, by securing an earlier trial of his case or by inducing the appellee to confess judgment, exhaust the liability of the latter and render the appellant's suit fruitless.    "The bringing of a suit vests in a party no right to a particular decision and his case must be determined on the law as it stands not when the suit was brought but when the judgment was rendered."    *Madigan* v. *The Building Assn.*, 73 Md. 321; *Cooley on Const. Lim.*, 468. Nor has any one a vested right in any particular remedy or form of proceeding.    *Cyc.*, vol. 1, p. 705 and notes.    *Wilson* v. *Simon, supra.*

The Act of 1904 left the appellee liable, in respect to the debts of the Trust Company, to the same extent and to the same persons that he was liable before its passage.    The only change it made was to require those persons instead of suing him separately at law to unite with the other creditors of the trust company in a suit against all of its stockholders in a Court of equity where the rights of the several creditors and the liabilities of the several stockholders might be ascertained and enforced at the same time.    We are unable to see how any substantial injury is inflicted upon the appellant's contractual rights by insisting upon their enforcement by means of a creditor's bill in a Court of equity which is a tribunal regulated by principles and furnished with agencies well suited to the complete and fair adjustment of conflicting rights and varied interests instead of leaving them to the uncertain results of a struggle between competing creditors in the pursuit of separate actions at law.

The adjustment and enforcement, in any tribunal and under any form of proceedings, of the rights of creditors as against stockholders in a case like this, where certain stockholders are liable to certain creditors and not to others, is a difficult

and complex undertaking but the rights of the creditors in such a case are not materially lessened or impaired by a statute conferring upon Courts of equity the exclusive jurisdiction to ascertain and enforce their respective rights against the several stockholders in a single proceeding. We withhold the expression of any opinion as to whether such a proceeding in equity, combining in one suit different plaintiffs of whom some have claims against certain of the defendants and others have claims against different defendants, would have been multifarious without the aid of the statute now under consideration. That question is directly put in issue in the case of *Murphy* v. *Wheatley* tried at the present term of this Court and it will be disposed of by the opinion to be filed in that case.

The appellant in support of its contention has quoted in its brief from a number of decisions of the Supreme Court of the United States strong assertions in varied forms of expression of the conceded doctrine of the invalidity of legislation attempting to so change the remedy for an existing contractual right as to substantially impair the value of the right itself. An examination of those cases will show that none of them present a state of facts so closely resembling those at bar as to furnish a controlling precedent for the determination of the present case. As was truly said, in *Von Hoffman* v. *Quincey*, 4 Wall. 535, "No attempt has been made to fix definitely the line between alterations of remedy which are deemed to be legitimate and those which under the form of modifying the remedy impair substantial rights. Every case must be determined upon its own circumstances."

The other cases of *Woodworth* v. *Bowles*, 61 Kan. 569; *Dexter* v. *Edmands*, 89 F. R. 467; *Western Natl. Bank* v. *Reckless*, 96 F. R. 70; *Evans* v. *Nellis*, 101 F. R. 920, and *Webster* v. *Bowers*, 104 F. R. 627, which were much relied on by the appellant all related to statutes changing the remedy for the enforcement of stockholders liability for corporate debts, but they are all quite distinguishable from the one now under consideration. Although those cases arose in different jurisdictions every one of them was a controversy between the cred-

itors and stockholders of a Kansas corporation and it was ad-
mitted in each case that the issue was to be determined by the
laws of that State regulating the remedies of the creditors of
à domestic corporation against its stockholders.

The statute law of Kansas in force prior to 1897 made each
stockholder of a banking corporation liable for its debts to an
additional amount equal to the stock owned by him and as
the law then stood any creditor of the corporation could en-
force this liability against any stockholder by suit at law or if
he had already secured a judgment for the debt against the
corporation, he could by leave of Court issue execution
thereon against the stockholder.   Section 55 of the Act of
1897 of the State of Kansas provided that at the expiration of
a year from the closing of any banking corporation the re-
ceiver thereof should "institute proceedings in the name of the
bank for the collection of the liability of the stockholders of
such bank" and that the sums so collected should "become
a part of the assets of the bank and be distributed *pro rata* to
the creditors thereof in the same manner as other funds."
The same Act prohibited direct proceedings by any creditor
against the stockholder to enforce the liability of the latter
unless it should appear to the satisfaction of the Court that
the receiver had failed to bring suit as required by the Act.
In *Woodworth* v. *Bowles*, 61 Kan. 569, the Supreme Court
of Kansas was called upon to determine the operation of the
law of 1897, upon suits pending when it went into force which
had been instituted by creditors of an insolvent banking com-
pany against its stockholders to enforce their statutory liability
for the debts of the corporation.   The Court in an exhaustive
opinion held that the right of the creditors who had brought
suit against the stockholders was a contractual one and the
Act of 1897 could not be given a retroactive force so as to
destroy or impair their right to maintain their pending suits.
The reasons stated in the opinion in that case for the Court's
conclusion were that to give the Act a retroactive operation
would impair the contractual rights of the creditors who had
already brought suit because it would suspend for a year the

pursuit by them of the special remedy afforded by the laws in existence at the time of the making of their contracts, and because secondly, if the receiver instituted proceedings at the end of the year the creditors having brought suit were altogether deprived of their remedy and the fund collected by the receiver would be distributed among all of the creditors *pro rata* and the substantive right of the suing creditor would be thereby affected. It was further pointed out in the opinion that under the old law a creditor by the exercise of diligence and vigilance might secure payment in full of his debt, whereas if he were compelled to await the result of the institution of the suit at the end of a year by the receiver he might fare much worse.

In the other four of the cases to which we have last referred the Courts of other jurisdictions adopted and enforced the same construction of the Kansas law. In *Dexter* v. *Edmands*, and *Western Natl. Bank* v. *Reckless*, the Court rather broadly declared that a law forbidding the maintenance of a suit at law by the individual creditor against the individual stockholder and requiring in lieu thereof an action in equity on behalf of all of the creditors against all of the stockholders practically destroyed the substantial right of action of the creditor. It must, however, be remembered that the subject then under consideration was the effect of the Kansas Act of 1897, and the expressions used by the Courts must be understood as referring to its operation and not as applicable to other laws which produced no such results as that one did.

The Kansas law absolutely deprived the creditor of any remedy at all for an entire year, and when the remedy provided by the statute was put in operation for his benefit its prosecution was under the control of the receiver and its results were subject to the expenses of the receivership and the net sum realized from all of the stockholders was to be divided *pro rata* among all of the creditors. It was the probability of results of that character to which we referred in the case of *Colton* v. *Mayer*, *supra*, in denying to the receivers of the corporation then before us the right to file a bill to enforce the

statutory liability of the stockholders for the corporate debts on behalf of the creditors to whom the liability was held to be due.

No such results will follow the use of the remedy provided by the Act of 1904, ch. 337. Although all parties interested will be brought into one suit in equity it will be the suit of the creditors themselves and will be under their control and the funds recovered from each stockholder will be apportioned according to equitable principles to those creditors only to whom he is indebted and the creditor will be protected from the risk of losing his debt involved in the competitive rush of individual creditors and the possible willingness of the debtor to benefit a particular creditor by confessing judgment in his favor. A further commendable feature of the proceeding in equity provided by the present law is that it affords to the stockholders an opportunity to adjust their relative rights of contribution and thus holds out to such of them as are non-residents an inducement to come into the case and submit themselves to the jurisdiction of the Maryland Court and meet their obligation to its citizens.

We are of opinion that the Court below committed no error in sustaining the demurrer as to the declaration and dismissing the suit, and we will affirm the judgment of dismissal.

*Judgment affirmed with costs.*

(Decided November 30th, 1904.)