REPUBLIC IRON & STEEL CO. v. CARLTON.

(Circuit Court, D. Maryland. June 23, 1911.)

1. CORPORATIONS (§ 268*)—STOCKHOLDERS' LIABILITY—UNPAID SUBSCRIPTION—ACTION BY CREDITOR—COMPLAINT.

In an action by a corporate creditor against a stockholder to recover an unpaid stock subscription, the complaint was not demurrable for failure to negative that defendant purchased the stock for less than par under circumstances which would relieve him from further payment, or to show that the stock was not issued and sold for less than par, as authorized by Code Pub. Gen. Laws Md. 1904, art. 23, § 408.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1138; Dec. Dig. § 268.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. CONSTITUTIONAL LAW (§ 46*)—DETERMINATION OF VALIDITY OF ACT—ABSTRACT PROPOSITION.

Whether so much of a statute as provided that it should be retroactive was unconstitutional would not be determined in a suit brought after the passage of the act.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 43–45; Dec. Dig. § 46.*]

3. CONSTITUTIONAL LAW (§§ 145, 169*)—OBLIGATION OF CONTRACTS—STOCKHOLDERS' LIABILITY—UNPAID SUBSCRIPTION.

In Maryland, the liability of a stockholder of a corporation to a creditor is one founded on contract, which the Legislature has no right to impair by subsequent legislation, nor can the Legislature so change the remedy as to subsequently impair or lessen the value of the contract right.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. §§ 145, 169.*

Statutory change of remedy as impairing obligation of contracts, see note to City of Cleveland, Tenn., v. United States, 93 C. C. A. 281.]

4. CORPORATIONS (§ 562*)—STOCKHOLDERS' LIABILITY—STATUTORY LIABILITY—NATURE AND EFFECT.

In the absence of special statutory provisions a stockholder's liability to creditors in addition to the par value of the stock subscribed for, is not an asset of the corporation, and does not pass to the corporation's receiver or trustee in bankruptcy, but is exclusively a liability attaching for the benefit of creditors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2265–2279; Dec. Dig. § 562.*]

5. CORPORATIONS (§ 562*)—STOCKHOLDERS' LIABILITY—UNPAID STOCK SUBSCRIPTIONS.

A stockholder of a corporation, independent of statute, is liable to the corporation for the unpaid balance of his subscription and the right to recover such balance is an asset of the company and passes to a receiver or to a trustee in bankruptcy.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2265–2279; Dec. Dig. § 562.*]

6. CONSTITUTIONAL LAW (§ 169*)—STOCKHOLDERS' LIABILITY—REMEDY—CHANGE—CONTRACT RIGHTS—VIOLATION.

Prior to Laws 1908, c. 305, a creditor was entitled to sue a stockholder of a Maryland corporation for his unpaid subscription to the capital stock, and apply the proceeds of the suit to his own exclusive benefit, though the creditor's right to judgment terminated if, before judgment was rendered, the defendant paid the balance to the corporation, to a receiver, or to another creditor, or another creditor or a receiver of the corporation recovered judgment against defendant for such balance, whether the judgment was confessed or rendered as the result of a genuine contest. Laws 1908, c. 305, declared that the exclusive remedy for the enforcement by creditors of the liability of a stockholder for unpaid subscriptions should be as against stockholders residing in Maryland, by a bill in equity as a creditor's bill against such stockholders by creditors in the county or city of the principal office of the corporation, and abated all actions of law brought subsequent to July 1, 1907, as against such stockholders to enforce unpaid subscriptions. *Held,* that such act did not so alter the contract remedy theretofore existing in favor of a creditor of a corporation to recover stockholders' unpaid subscriptions as to render the same invalid as an impairment of the creditor's contract rights.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 474, 478–502; Dec. Dig. § 169.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**7. COURTS (§ 366*)—FEDERAL COURTS—DECISIONS OF STATE COURTS—STOCKHOLDERS' LIABILITY TO CREDITORS.**

Where a contract by delinquent stockholders of a corporation to pay the amount due on their stock was implied from a remedy which the Maryland courts had worked out for the enforcement of the statutory liability imposed by the state on persons who became members of its corporations, the construction given to the statute by the highest court of the state at and before the time at which they became stockholders and creditors determines the meaning of such contract.·

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. § 366.*]

At Law. Action by Republic Iron & Steel Company against Howard Carlton to recover as creditor an unpaid stock subscription of defendant to the South Baltimore Steel Car & Foundry Company. On demurrer to declaration. Sustained.

J. Kemp Bartlett and L. B. Keene Claggett, for plaintiff.

Moses R. Walter, Joseph C. France, and J. Southgate Lemmon, for defendant.

ROSE, District Judge. This is an action at law. The Republic Iron & Steel Company is the plaintiff. It is a New Jersey corporation. It will be called the plaintiff. Howard Carlton is the defendant. He is a citizen of Maryland. He will be styled the defendant. The suit is brought to recover from the defendant unpaid installments of subscriptions alleged to have been made by him to the capital stock of the South Baltimore Steel Car & Foundry Company. It is a Maryland corporation. It will be spoken of as the company.

The defendant demurs to the declaration. The facts admitted by the demurrer are as follows: The company owes the plaintiff $15,839.12 for merchandise sold and delivered. The defendant became a stockholder of the company before such indebtedness was incurred. He remained a stockholder until the suit was brought. He held 360 shares of the preferred and 718 of the common capital stock of the company, the aggregate par value of which was $107,800. The stock was acquired by the defendant from the company by subscription or purchase. The company received for it $89,200. $18,600 of the par value of said stock has never been paid into the company's treasury. As to said shares the defendant was an original stockholder. He knew that said stock was not fully paid and of the extent of such nonpayment. The declaration asserts that the 360 shares of preferred stock held by the defendant were not of the class known as ordinary or pure preferred capital stock, and were not issued under and in accordance with section 408 of article 23 of the Code of Public General Laws of Maryland 1904.

In support of his demurrer the defendant says, first, the declaration is bad in substance; second, it states no cause of action of the plaintiff against the defendant; third, the exclusive remedy for the enforcement by the plaintiff against the defendant of the rights it may have against the defendant as set forth in the declaration is by a bill in equity in the nature of a creditors' bill filed against the stockholders

of the company by one or more of its creditors on behalf of themselves and of all its other creditors who may come in and make themselves parties thereto.

[1] The objections to the declaration intended to be raised by the first and second grounds of demurrer, other than the one specifically set up by the third, are: First. There may be circumstances under which a person may subscribe for the stock of a corporation or buy such stock from the corporation for less than its par value without becoming liable to pay anything further upon such stock. Handley v. Stutz, 139 U. S. 417, 11 Sup. Ct. 530, 35 L. Ed. 227; Clark v. Bever, 139 U. S. 96, 11 Sup. Ct. 468, 35 L. Ed. 88; Fogg v. Blair, 139 U. S. 118, 11 Sup. Ct. 476, 35 L. Ed. 104; Rickerson R. M. Co. v. Farrell Foundry & Machine Co., 75 Fed. 554, 23 C. C. A. 302. The declaration does not negative the existence of such circumstances. Second. The declaration alleges that 360 shares of stock held by the defendant of the par value of $36,000 is preferred stock. The total difference between the aggregate par value of the stock, common and preferred, held by the defendant and the amount he paid for the same may have been due to his getting the preferred stock at less than par. By section 408 of article 23 of the Code of Public General Laws of Maryland 1904, a corporation may dispose of its preferred stock by sale on such terms as it may prescribe. In another case in this court Judge Morris has held that this company had the right to dispose of its preferred stock upon such terms as seemed to it best. The declaration says that the preferred stock held by the defendant was not preferred stock issued under section 408 of article 23 of the Code. The defendant answers that all preferred stock issued by a Maryland corporation is necessarily issued under that section. It is not necessary to pass upon either of these contentions. Such defenses are not open in all cases. When they are defendant may set them up by plea. To require the plaintiff to negative them in advance leads to unnecessary prolixity in pleading.

The defendant's third ground of demurrer is based on the provisions of chapter 305 of the Acts of 1908. This act declares that the exclusive remedy for the enforcement by creditors of the liability of a stockholder for unpaid subscriptions to capital stock of a corporation shall be as against stockholders residing in Maryland by a bill in equity in the nature of a creditors' bill filed against such stockholders by creditors in the county or city of the principal office of the corporation. The act became law April 6, 1908. It declared that it should be operative as of July 1, 1907. It abated all actions at law brought since July 1, 1907, against stockholders to enforce liability for unpaid subscriptions to capital stock. The plaintiff says that so much of this act as declared that it should go into effect nine months before it was passed, and directed the abatement of suits which had been properly instituted before its passage, is unconstitutional. In this case it is immaterial whether the plaintiff is right or not.

[2] Its suit was brought April 20, 1908, two weeks after the passage of the law. The provisions of the enactment which direct the abatement of previously instituted suits do not affect the plaintiff. It is

189 F.—9

not proper, therefore, to pass upon their validity in this case. Southern Railway Co. v. King, 217 U. S. 534, 30 Sup. Ct. 594, 54 L. Ed. 868; Engel v. O'Malley, 219 U. S. 135, 31 Sup. Ct. 190, 55 L. Ed. 128.

In the case of Knickerbocker Trust Co. v. Myers, 133 Fed. 766, in the Circuit Court, and in the same case in the Circuit Court of Appeals for the Third Circuit as reported in 139 Fed. 111, 71 C. C. A. 199, 1 L. R. A. (N. S.) 1171, the Maryland act declared unconstitutional was not passed until after the suit sought to be abated by it had been instituted.

The plaintiff says that when the defendant subscribed for his stock and when the company became the plaintiff's debtor the plaintiff had a right to sue the defendant at law. Any judgment recovered in such suit would be for the plaintiff's exclusive benefit. The right so to sue, it asserts, became vested at the time the company became indebted to it. Legislation taking from it such a right and compelling it to proceed in a court of equity against all the stockholders for the benefit ratably to all the creditors, it argues, impairs the obligation of its contract, and is, therefore, invalid.

[3] In Maryland the liability of a stockholder to a creditor of a corporation is one founded on contract. Norris v. Wrenschall, 34 Md. 499; Coulbourn v. Boulton, 100 Md. 351, 59 Atl. 711; Brant v. Ehlen, 59 Md. 27; Steel Co. v. Equitable Society, 113 Md. 80, 77 Atl. 255. It follows that the plaintiff has a right to insist that the obligation of that contract shall not be impaired by subsequent legislation. Nor may the state so change the remedy as substantially to impair or lessen the value of the contract. Seibert v. Lewis, 122 U. S. 284, 7 Sup. Ct. 1190, 30 L. Ed. 1161. Whether the act of Assembly of Maryland relied on by the defendant does either of these things depends, first, on what was the contract upon which the defendant is sought to be held; and second, what remedies the plaintiff had for the enforcement of such contract at the time it became a creditor of the company. These questions will necessarily be considered together.

The contract of the defendant was that he should pay the full par value of his stock to the company. Until he did, he remained liable to pay such balance to the creditors of the company. There have been and still are other obligations, contractual in their nature, under which by the Maryland law a stockholder in some kinds of companies may come to its creditors. Article 3, § 39, of the state Constitution, makes the stockholders of any banking corporation liable to the amount of their respective share or shares of stock for all the corporation's debts and liabilities upon note, bill or otherwise. Prior to the passage of chapter 101 of the Acts of 1904, stockholders in safe deposit, trust, guaranty and fidelity companies were liable to the depositors and creditors of such corporation for double the amount of stock at par value held by such stockholders in such corporations. This liability, originally imposed in most instances upon stockholders of particular companies by special act of the Legislature, was expressly made applicable to all such companies by section 85L of chapter 109 of the Acts of 1892. This liability was reduced by chapter 101 of the Acts of 1904 to the amount of each stockholder's stock at the par value thereof

in addition to the amount invested in the stock. The contract, under which the stockholders in banking and trust companies became liable to the creditors, is not in any sense a contract with the corporation. The liability of the stockholders was not an asset of the corporation. The right to enforce it did not vest in the receiver of the corporation. Colton v. Mayer, 90 Md. 712, 45 Atl. 874, 47 L. R. A. 617, 78 Am. St. Rep. 456.

[4] In the absence of special statutory provisions such liability of stockholders never is an asset of the corporation. It does not pass to a receiver nor to a trustee in bankruptcy. In re Jassoy Co., 178 Fed. 515, 101 C. C. A. 641. It was the liability imposed by section 85L of chapter 109 of the Acts of 1892 which was in question in Knickerbocker Trust Co. v. Myers, supra. In Maryland such liability could not at the time the Knickerbocker Trust Company sued Myers have been enforced either by the corporation itself or by a receiver of it. Payment to the receiver or to the corporation would not have extinguished the liability.

[5] The plaintiff in the case at bar says the defendant has never fully paid for his stock. The defendant, therefore, at common law and independent of statute is liable to the company for the unpaid balance of his subscription. The right to recover such balance is an asset of the company. It is an asset which does pass to a receiver or to a trustee in bankruptcy. Colton v. Mayer, 90 Md. 712, 45 Atl. 874, 47 L. R. A. 617, 78 Am. St. Rep. 456; Scovill v. Thayer, 105 U. S. 155, 26 L. Ed. 968; In re Remington Automobile Co., 18 Am. Bankr. Rep. 389, 153 Fed. 345, 82 C. C. A. 421. In this state at the time the defendant became a stockholder in the company, and at the time the plaintiff became a creditor of it there were statutory provisions as construed by the Maryland courts which enabled a creditor of a corporation to enforce such liability against a stockholder otherwise than through a receiver.

[6] Stockholders of manufacturing companies incorporated under the provisions of chapter 338 of the Acts of 1852 were severally and individually liable to the creditors of the company to an amount equal to the amount of stock held by them respectively for all debts and contracts made by the company until the whole amount of capital stock fixed and limited by the company had been paid in. This provision was in substance carried into the General Incorporation Law of 1868 as section 59 of chapter 471 of the Acts of that year. It thus became applicable to all corporations incorporated under the general law. Stockholders in such companies were thus subjected to a statutory obligation which might be much greater in amount than their common-law liability.

Assume that, under the act of 1852, or under the act of 1868, a corporation had been incorporated with a capital of $50,000. Forty-five thousand dollars of this capital had been subscribed and paid in. Five thousand dollars of it was either never subscribed, or, if subscribed, was not paid in. A stockholder in such a company who had subscribed for stock to the par value of $1,000, and had paid $1,000 in cash on such subscription, would still have remained liable to the

creditors of the company for another $1,000. His liability ended, however, when the total capital stock of the company became paid up. Booth v. Campbell, 37 Md. 522. A creditor could enforce such liability so long as it existed by a suit at law against a stockholder. The bringing of such suit arrested the running of the statute of limitations. It gave the creditor who bought it a start over all other creditors whose suits were subsequently instituted. He had somewhat a better chance than they of obtaining the first judgment. He had no certainty of so doing. Various accidents and mischances might delay him without delaying others who began their actions later. The stockholder might come in and confess judgment to another creditor. Among creditors who obtained judgments against any particular stockholder the creditor whose judgment was earliest in date had the first right to be paid, whether his suit was brought before or after other creditors. Garling v. Baechtel, 41 Md. 326; Miners' Bank v. Snyder, 100 Md. 63, 59 Atl. 707, 68 L. R. A. 312, 108 Am. St. Rep. 390. Moreover, there was no certainty even after suit brought that a judgment could be obtained by any creditor. If the capital stock of the company became fully paid before judgment rendered, the suit abated.

On April 11, 1871, the capital stock of a company was increased to $45,000. One Booth subscribed for $4,000 of this increase. He paid for it in full in cash. On July 14, 1871, the company issued a short-term promissory note. It was not paid at maturity. On November 10, 1871, the holder of this promissory note sued Booth. On July 14, 1872, eight months after suit was brought, the stock of the company became fully paid up. In the court below judgment was given for the holder of the note against Booth. This judgment was reversed by the Court of Appeals. The latter tribunal said if the whole capital stock was paid in before the trial of the suit the antecedent liability of Booth had terminated, and the holder of the promissory note was not entitled to prosecute his claim to a judgment against him. Booth v. Campbell, 37 Md. 522. Since 1872 a stockholder in a Maryland corporation, other than a bank or trust company, cannot be called on to pay any more money than he is liable for at common law. He is still subject to a liability which in kind was the same which had been imposed by the acts of 1852 and 1868. The Legislature of 1872 (Laws 1872, c. 203) re-enacted section 59 of the Incorporation Act of 1868, but it added to it the proviso that no stockholder shall be individually liable to the creditors of such corporation except to the amount of his, her, or their unpaid subscription to capital stock. Under the law of Maryland as interpreted at the time the plaintiff became a creditor and the defendant a stockholder of the company the defendant was liable to the company or to its receiver for the unpaid portion of his subscription to the capital stock. Fiery v. Emmert, 36 Md. 471; Colton v. Mayer, 90 Md. 712, 45 Atl. 874, 47 L. R. A. 617, 78 Am. St. Rep. 456; Crawford v. Rohrer, 59 Md. 604. If this liability had been enforced by the receiver, the money collected from the defendant would have been divided ratably among all the company's creditors. The defendant was also liable to the creditor or creditors of the company who should first recover judgment against him for the amount

of their judgment or judgments not exceeding the unpaid balance of his subscription. If he paid the receiver after the creditor had sued him, but before judgment was recovered, the suit abated. If the creditor recovered judgment before the receiver was paid, and before the receiver recovered judgment, the receiver's claim against the stockholder was reduced to the amount, if any, by which the unpaid subscription exceeded the creditor's judgment. Emmert v. Smith, 40 Md. 129; Strauss v. Heiss, 48 Md. 292.

Had there been no statutory provision on the subject the liability of the stockholder to pay the unpaid balance of his subscription would have been an asset of the company. As such it would have passed to its receiver when one was appointed. An individual creditor's right to institute a suit at law for his own exclusive benefit for its collection would have been at an end. The same result doubtless would have followed had the statute contented itself with declaring that a stockholder should remain liable for the balance of his subscription to its capital stock. In either of such events the present question could not have arisen in this case. Nearly six months before the present suit was instituted the United States Circuit Court for the District of Maryland appointed receivers for the company. The company was insolvent, and its receivers converted its assets into money and distributed them among its creditors. But such was not the law of Maryland. The receiver had the unquestioned right to collect unpaid balances of stockholders' subscriptions. Nevertheless, our courts held that as the Act of Assembly still declared that a stockholder remains liable to the creditors, the liability was one which a creditor might also enforce. As the law was before the act of 1908, a stockholder could not plead, in defense of a suit brought against him by a creditor, the pendency of a bill in equity against him by creditors, other stockholders, or a receiver to enforce his liability for unpaid subscriptions. Norris v. Johnson, 34 Md. 485.

This review of the Maryland law as it stood before the passage of the act of 1908 makes it possible to state with accuracy the precise contract, to the unimpaired obligation of which the plaintiff is entitled. It had the right to sue the defendant for his unpaid subscription to capital stock of the company. The proceeds of such a suit it might apply to its own exclusive benefit. To bring suit against a solvent defendant who still owed money upon his stock subscription might have profited the plaintiff nothing. Its right to judgment would have been at an end if, either before or after suit brought and before judgment recovered, first, the defendant paid such balance to (a) the company, or (b) a receiver of the company, or (c) to another creditor of the company; second, another creditor or a receiver of the company had recovered judgment against the defendant for such balance. It would have made no difference whether the judgment had been confessed or had been rendered as the result of a genuine contest.

The decisions which established the above principles of law were given many years before the case of Knickerbocker Trust Co. v. Myers, supra, came before the United States Circuit Court of Appeals for the Third Circuit. That court was therefore in error in holding that the

right of a plaintiff who was the first to *bring suit* against a particular stockholder to enforce his liability as stockholder became exclusive of the similar right of other creditors. In the case at bar the contract was not made by statute between the state and another party. When the agreement is so made the federal courts will construe the contract— that is to say, the statute—for themselves. They are not bound by the decisions of the state courts.

[7] The contract here relied on is implied from the remedy which the courts of Maryland had worked out for the enforcement of the statutory liability imposed by the state of Maryland upon persons who became stockholders in its corporations. Those who become stockholders or creditors of Maryland companies enter into the contract prescribed by statute as then interpreted by the state courts. The construction which has been given by the highest courts of the state to that statute at and before the time at which they became stockholders and creditors determines the meaning of the contract they have made. Sauer v. New York, 206 U. S. 549, 27 Sup. Ct. 686, 51 L. Ed. 1176. This rule of law is decisive of the case now under consideration. The plaintiff did not become a creditor of the company until July 18, 1907. On November 30, 1904 the Court of Appeals of Maryland handed down its opinion in the case of the Miners' & Merchants' Bank of Lonaconing v. Snyder, 100 Md. 57.[1] In 1903 the City Trust & Banking Company, a Maryland corporation, became insolvent. The Miners' & Merchants' Bank of Lonaconing was a creditor of the broken company. It sued Snyder, who was a stockholder in that company, to enforce against him for its benefit the liability imposed on him by statute. Before judgment was secured the Legislature of Maryland declared that the exclusive remedy of creditors to enforce the statutory liability of stockholders in a trust company should be by a bill in equity on behalf of all the creditors against all the stockholders. It further directed that all pending actions at law against such stockholders should be abated. The court held that such act was valid, and that the suit of the Miners' & Merchants' Bank abated. As has already been stated, the liability sought to be enforced in the last-above mentioned case was a liability exclusively to creditors. It was one which could not have been defeated by payment to the corporation or to its receiver. Nevertheless, the court held that in Maryland the implied power was reserved to the Legislature so to alter the contract made by such a statute as to take from a creditor the right to sue at law for his own benefit, and to require it to unite with all the other creditors in a proceeding in equity against all the stockholders. When the plaintiff in this case sold the merchandise to the company, for the price of which it is now suing, it did so, knowing that in Maryland the contract created by statute between it and the defendant had the meaning given nearly three years before to a similar contract by the highest court of the state.

The case which comes nearest to supporting the plaintiff's contention is Harrison v. Remington Paper Co., 140 Fed. 387, 72 C. C. A. 405, 3 L. R. A. (N. S.) 954. There a creditor sued at law a stockholder of a Kansas corporation. When the debt was contracted the

[1] 59 Atl. 707, 68 L. R. A. 312, 108 Am. St. Rep. 300.

law of Kansas provided that when the corporation suspended business for more than one year it was deemed dissolved. Suit might then be brought by any creditor against any person or persons who were stockholders at the time of its dissolution. Such creditor was not required to join the corporation as a defendant in the suit. If execution was returned unsatisfied upon a judgment against the corporation, the creditor in whose favor the judgment had been given might upon motion have execution issued on such judgment against any stockholder of the corporation for an amount equal to the amount of stock held by such stockholder. The creditor might bring an action against such stockholder upon the unsatisfied execution. The corporation involved in the suit in question was the Topeka Capital Company. It suspended business November 18, 1895. Something more than three years after the suspension of the business, but before suit brought, the Legislature of Kansas so amended the law as to provide an exclusive statutory remedy to enforce stockholders double liability. By the new act a creditor must first secure a judgment against the corporation; then there had to be a return of nulla bona upon an execution issued upon the judgment. After that was done the appointment of a receiver had to be made. The receiver then collected from the stockholders the amount due by them, or such portion thereof as might be necessary, and then distributed the sum so collected pro rata among all the creditors of the corporation. The Circuit Court of Appeals for the Eighth Circuit in the case above cited held that the defendant when he took his stock made a contract with the company and its creditors under the laws of Kansas as they then stood. It said that the act struck down the plaintiff's individual cause of action against the stockholders. It left him nothing but a right to a proportionate share with all the other creditors of the amount which a receiver, who could not be appointed until after a judgment and an unsatisfied execution against the corporation, might collect. The proceeding by judgment against the corporation by the subsequent appointment of a receiver and by his enforcement of the stockholders' liability and his distribution of the proceeds pro rata among all the creditors was a slower, a more complicated, and a less effective means of enforcing the contract. In the view of the court the change necessarily lessened the value of the contract and obstructed and postponed its enforcement.

The liability sought to be enforced against the stockholders of the Kansas corporation was a different liability from that of which the plaintiff here seeks the benefit. The stockholder in the Kansas corporation had fully paid for his stock. He was being sued for the additional liability imposed upon him by the Constitution and laws of Kansas. He could not have discharged this liability by payment to the corporation or to a receiver of the corporation either before or after suit brought against him. Under the Kansas law the first creditor who began proceedings against a stockholder acquired a lien on that stockholder's liability which could not be affected by proceedings of another creditor. Wells v. Robb, 43 Kan. 201, 23 Pac. 148. A Kansas stockholder who had been sued by a creditor to enforce his statutory liability could not subsequently seek out some creditor of the corporation other

than the plaintiff and pay him in preference to the plaintiff. Brown v. Trail (C. C.) 89 Fed. 645. That a Maryland stockholder could always do. Before the Remington Paper Company became a creditor of the Topeka Capital Company no Kansas court had decided that the remedies given by the Kansas statute to a creditor were subject to be changed at the legislative will in precisely the way in which they subsequently were changed.

Under these circumstances the authority of this case, if otherwise unshaken, could not be held to control the one now under consideration. Its authority is not unshaken. It is true that the Supreme Court of the United States denied the stockholder's petition for a writ of certiorari. 199 U. S. 607, 26 Sup. Ct. 747, 50 L. Ed. 331. Nevertheless, the same Kansas statute, declared unconstitutional by the Circuit Court of Appeals for the Eighth Circuit in Harrison v. Remington Paper Co., was subsequently passed upon by the Supreme Court of the United States in the case of Henley v. Myers, 215 U. S. 373, 30 Sup. Ct. 148, 54 L. Ed. 240. In that case the receiver of a Kansas corporation had followed the procedure prescribed by the act in question. He had obtained a decree in equity against a stockholder requiring him to pay the amount of his liability to the receiver. The stockholder carried the case to the Supreme Court. He alleged that the obligation of his contract had been impaired by this change of remedy. The court said:

"In becoming stockholders the defendants did not acquire a vested right in any particular mode of procedure adopted for the purpose of enforcing their liability as stockholders. It is a well-established doctrine that mere methods of procedure in actions on contract that do not affect the substantial rights of parties are always within the control of the state. It is to be assumed that parties make their contracts with reference to the existence of such power in the state."

It is true that the Supreme Court in Henley v. Myers was dealing only with the complaint of the stockholders that the obligation of their contract had been materially altered to their prejudice. The plaintiff is entitled to argue that when it found that the stockholders before the court were not hurt by the change it did not stop to ask whether creditors who were not before the court had been injured.

After all said, however, the view taken by the Supreme Court of changes of procedure which affect the rights of the parties even more radically than it can be contended that made by the Maryland Legislature can possibly do, is shown by what it said in the case of Bernheimer v. Converse, 206 U. S. 516, 27 Sup. Ct. 755, 51 L. Ed. 1163. Bernheimer was a stockholder in a Minnesota corporation. He was a nonresident of Minnesota. Under the law of Minnesota, as it stood when he became a stockholder, his liability as stockholder for the debts of the corporation was absolutely unenforceable. Hale v. Allinson, 188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. 380. The Supreme Court said:

"The obligation of the contract binds the stockholder to pay to the creditors of the corporation an amount sufficient to pay the debts of the corporation which its assets will not pay, up to an amount equal to the stock held by each shareholder. Any statute which took away the benefit of such contract or obligation would be void as to the creditors, and any attempt to increase the obligation beyond that incurred by the stock-

holder would fall within the prohibition of the Constitution. But there was nothing in the laws of Minnesota undertaking to make effectual the constitutional provision to which we have referred, preventing the Legislature from giving additional remedies to make the obligation of the stockholder effectual, so long as his original undertaking was not enlarged. There is a broad distinction between laws impairing the obligation of contracts and those which simply undertake to give a more efficient remedy to enforce a contract already made."

It was settled many years ago that although the new remedy given by state legislation may be deemed less convenient than the old one, and may in some degree render the recovery of debts more tardy and difficult, yet it will not follow that the law is unconstitutional. Bronson v. Kinzie, 1 How. 315, 11 L. Ed. 143.

What has been the change made by the Legislature of Maryland in the remedy for the enforcement by the plaintiff of the defendant's contract? Before the act was passed it was absolutely in the power of the defendant to do what the Legislature now says he must do. The defendant could always have paid the money to the corporation or to its receiver. It would have been distributed among all the stockholders precisely as it will now be distributed. It was in the power of the defendant to keep the plaintiff from getting a single cent from him. After suit brought by the plaintiff the defendant could have paid another creditor or he could have confessed judgment to another creditor. In either case the plaintiff would have taken nothing by his suit. This, defendant can no longer do. As the law now stands the defendant cannot keep the plaintiff from getting his equitable share of what the defendant owes for his stock. Such a change in the remedy is not a change which substantially alters the plaintiff's remedy to the plaintiff's hurt. The Legislature must have the power to change the remedy. Every change may in some circumstances and under some conditions make the new procedure less convenient or satisfactory to one of the parties to the contract. It is not practicable for that reason to tie the hands of the Legislature. The power to alter the remedy is peculiarly necessary with reference to the class of contracts with which this case is concerned. Many corporations issue bonds payable 50, 75, and a hundred years after date. These bonds are secured by mortgages on the property of the corporation. In every, or nearly every, case they are also promises of the corporation to pay. The plaintiff says, in effect, that the method of enforcing stockholders' liability existing at the time such bond was issued cannot be changed by the Legislature during the whole time which must elapse before the maturity of the bond. If this act is unconstitutional it would seem that every state insolvent law which requires the surrender by the debtor of all his property to a trustee or assignee for his creditors generally is invalid as against creditors who became such before its enactment. It is difficult to see how such a suggestion can be seriously made. In the absence of legislation a debtor always had the right to convey all his property to a trustee for the equal benefit of all his creditors. No creditor could complain if the Legislature required a debtor, who could not pay all his creditors in full, to convey his property to a trustee or assignee for ratable division among all to whom he was indebted.

If a Legislature has the right to pass an insolvent law and to make it applicable to debts contracted before its passage, in so far as such act provides for the impounding of all the insolvent's property for the equal benefit of all its creditors, then the Legislature of Maryland had the right to pass the act complained of. The Legislature could not pass any act which would discharge the debtor from the obligation of a contract entered into before its passage. Sturges v. Crowninshield, 4 Wheat. 196, 4 L. Ed. 529; Baldwin v. Hale, 1 Wall. 223, 17 L. Ed. 531.

But that is another question. From the 1st day of December, 1839, to the 1st day of November, 1847, the Agricultural Bank of Mississippi was in possession as a tenant of the plaintiff of property in Natchez. By acts of the Legislature of Mississippi passed in 1843 (Laws 1843, p. 328) and 1846 (Laws 1846, c. 9), it was provided that upon the happening of certain events bank charters should become forfeited, and the courts were directed to appoint commissioners to audit claims against the property. A suit was brought by the plaintiffs in the United States Circuit Court for the District of Louisiana to recover for rent, some of which had accrued before the passage of the acts in question. The Supreme Court held that the case could not be maintained. Peale v. Phipps, 14 How. 368, 14 L. Ed. 459. The decision was placed on the ground of want of jurisdiction, the receiver being an officer of the state court and the property being in its custody. In the subsequent case of the Bank of Tennessee, 17 How. 157, 15 L. Ed. 70, the Court had before it an insolvent law passed by the Legislature of Louisiana. It said:

"Neither can there be any constitutional objection to this law of the state. The validity of a state law of this description has been fully recognized in the case of Peale v. Phipps [14 How. 368, 14 L. Ed. 459] and others and in the previous cases therein referred to, and cannot now be considered as an open question."

The question of the validity of this act now attacked has been before the Court of Appeals of Maryland. Its constitutionality has been affirmed. Pittsburg Steel Co. v. Baltimore Equitable Society, 113 Md. 77, 77 Atl. 255.

The demurrer of the defendant must be sustained. Its ·successful contention goes to the right of the plaintiff to maintain its action in any form. The plaintiff does not ask leave to amend. It follows that the defendant is entitled to judgment upon the demurrer.