Appeal from Fifth District.

# LYNCH v. JACOBSEN.

No. 3386.   Decided October 9, 1919.   (184 Pac. 929.)

1. CONSTITUTIONAL LAW—PROVISION FOR DOUBLE LIABILITY OF BANK STOCK IS SELF-EXECUTING. A constitutional provision imposing double liability on bank stockholders is self-executing. (Page 135.)

2. BANKS AND BANKING—ENFORCEMENT OF DOUBLE LIABILITY OF STOCKHOLDERS. Where Constitution provides double liability for bank stockholders in favor of creditors, but does not fix how it shall be enforced, the bank's creditors may enforce the liability in an ordinary action, either at law or in equity, though it seems that actions in equity have the preference under such circumstances. (Page 136.)

3. BANKS AND BANKING—ENFORCEMENT OF DOUBLE LIABILITY OF STOCKHOLDERS. Where constitutional provision imposing double liability on stockholders of banks fails to determine by whom the liability for benefit of creditors may be enforced, the Legislature may at any time determine who may sue the stockholders and what the nature of the proceedings shall be. (Page 136.)

4. BANKS AND BANKING—RECEIVER MAY ENFORCE DOUBLE LIABILITY OF STOCKHOLDERS. Where Constitution imposes a double liability for benefit of creditors on bank stockholders, a receiver, appointed to take charge of an insolvent bank's assets and wind up its affairs, may, under section 34, chapter 25 Laws, Utah 1911, sue to enforce the liability. (Page 136.)

5. BANKS AND BANKING—DETERMINATION OF DOUBLE LIABILITY OF SHAREHOLDERS. The order or judgment of the court declaring a bank insolvent and finding that it is necessary to enforce the stockholders' additional liability to pay the bank's debts, in the absence of fraud or collusion, is conclusive upon stockholders, and they may not assail it save in a direct proceeding. (Page 136.)

6. CONSTITUTIONAL LAW—CHANGE OF MODE OF ENFORCEMENT OF DOUBLE LIABILITY OF STOCKHOLDERS. Where state Constitution imposes a double liability on bank stockholders, the method of enforcing the liability may be changed by the Legislature, provided such change does not affect or enlarge the liability of the stockholders, and the Constitution does not itself provide a method of procedure. (Page 137.)

7. BANKS AND BANKING—ENFORCEMENT OF STOCKHOLDERS' DOUBLE LIABILITY. It is not essential to the enforcement of double liability imposed by law upon bank stockholders that all of the bank's assets be first exhausted, where it is apparent that the bank is insolvent. (Page 137.)

8. CONSTITUTIONAL LAW—SELF-EXECUTING PROVISIONS FIXING LIA-BILITY OF BANK STOCKHOLDERS. Where the Constitution imposes a liability without prescribing a remedy, the provision is a mere limitation on the power of the Legislature which may fix a remedy, but until the Legislature acts the courts will, the constitutional provision being self-executing, enforce the liability in accordance with some known remedy.[1]  (Page 138.)

9. CONSTITUTIONAL LAW—ENFORCEMENT OF DOUBLE LIABILITY ON BANK STOCK. The right to enforce the double liability imposed by Const. art. 12, section 18, on bank stockholders for the benefit of creditors, is not given by the Constitution to creditors; and, while not technically an asset of the corporation, it was competent for the Legislature to provide as it did by Laws 1911, chapter 25, section 34, for enforcement of such liability, by a receiver appointed on insolvency of a bank. (Page 139.)

10. BANKS AND BANKING—RECEIVER MAY ENFORCE STOCKHOLDERS' LIABILITY. Under Laws 1911, chapter 25, section 34, providing that a receiver, if appointed for a bank, shall, under direction of the court, take possession of the assets of every description, and may, if necessary to pay the debts, enforce all the individual liabilities of stockholders, a receiver is not limited to the general assets, but may, under order of court, enforce the stockholders' liability. (Page 144.)

11. CONSTITUTIONAL LAW—STATUTES HELD VALID UNLESS CLEARLY UNCONSTITUTIONAL. A legislative act cannot be stricken down on the ground that it is unconstitutional unless it is clearly and palpably so.[2]  (Page 144.)

12. STATUTES—TITLE OF ACT AUTHORIZING RECEIVER TO ENFORCE DOUBLE LIABILITY ON BANK STOCK. The title of the Act (Laws 1911, chapter 25) which in section 34 authorizes a receiver of an insolvent bank to enforce the double liability of stockholders, held sufficient to include that provision.  (Page 144.)

13. STATUTES—TITLE OF ACT AUTHORIZING RECEIVER TO ENFORCE DOUBLE LIABILITY ON BANK STOCK. The provisions authorizing a receiver of an insolvent bank to enforce the double liability of stockholders, found in section 34 of the General Banking Act, is not a separate and distinct subject from the general act.  (Page 145.)

14. BANKS AND BANKING —COMPLAINT IN ACTION ON DOUBLE LIA-

[1] *Steinke* v. *Loofbourow*, 17 Utah, 252, 54 Pac. 120; *McLaughlin* v. *Kimball*, 20 Utah, 254, 58 Pac. 685.

[2] *Marioneaux* v. *Cutler*, 32 Utah, 475, 91 Pac. 355; *Edler* v. *Edwards*, 34 Utah, 13, 95 Pac. 367; *State* v. *Candland*, 36 Utah, 406, 104 Pac. 255; *Salt Lake City* v. *Wilson*, 46 Utah, 60, 148 Pac. 1104.

BILITY OF SHAREHOLDERS. The allegations of a complaint by a receiver of an insolvent bank seeking to enforce the double liability of stockholders, that the bank was hopelessly insolvent, and that its assets were insufficient to pay its debts, and that it was necessary to collect the full amount of the statutory stockholders' liability, sufficiently show the necessity of enforcing stockholders' liability. (Page 146.)

15. ACTION—ABOLITION OF FORMS OF ACTION. While the Constitution abolished forms of action, there are still equitable as contradistinguished from legal rights and remedies, but the rights of a litigant depend entirely on the nature or character of the facts and the law applicable thereto. (Page 149.)

16. BANKS AND BANKING—ENFORCEMENT OF STOCKHOLDERS' LIABILITY. Receiver of insolvent bank who finds it necessary to enforce stockholders' double liability may sue as many of the stockholders in one and the same action as may be most convenient, indeed, if he wish, he may sue all stockholders in a single action; and for the same reason a stockholder sued separately may, where the rights of others would not be prejudiced, have his case heard in connection with cases against other stockholders. (Page 150.)

Appeal from District Court, Fifth District, Juab County; *Geo. Christenson*, Judge.

Action by Stephen H. Lynch, as receiver, against A. P. Jacobsen. From a judgment for defendant, plaintiff appeals.

REVERSED and REMANDED, with directions.

*Cheney, Jensen & Holman,* of Salt Lake City, for appellant.

*Thos. H. Burton,* of Nephi, for respondent.

*A. R. Barnes, James Ingebretson* and *M. E. Wilson,* all of Salt Lake City, for other stockholders of Merchants' Bank not parties to this action.

FRICK, J.

This action was commenced in the district court of Juab county by the plaintiff, as receiver of the Merchants' Bank of

Salt Lake City, against the defendant as a stockholder of said bank, to recover from him the additional liability which is imposed under the provision of the Constitution of this state, to which reference will hereinafter be made. After the case had been submitted by the plaintiff and defendant, several attorneys, who represent other stockholders in actions now pending in the district court of Salt Lake county, applied for and were granted leave to file briefs and arguments in support of the contentions advanced by the defendant in this action. The briefs and arguments filed by those attorneys have been considered by the court in connection with the arguments presented by counsel who represent the parties in this case, and hereinafter we shall only refer to the objections urged by counsel without referring to the counsel making them.

The plaintiff, in his complaint, in substance, alleged: That in a certain proceeding he was, by the district court of Salt Lake county, duly appointed receiver of the Merchants' Bank. That said bank was organized pursuant to the laws of Utah about July 1, 1908, with a capital stock of $250,000, divided into 2,500 shares of the par value of $100 each, and that all of said stock was issued and outstanding, and that the defendant is the owner of five of said shares. That "at the time of the appointment of said receiver and prior thereto the said bank was hopelessly insolvent, and its assets were and are insufficient to pay its debts and liabilities, and in order to pay the same it is necessary to collect the full and entire amount of the statutory stockholders' liability provided by chapter 25, Session Laws of Utah 1911, and on or about the 2d day of December, 1918, in due course of administration and upon petition of said receiver duly made, served, and filed in the said receivership proceedings, and upon hearing thereon regularly noticed and had, and evidence duly presented, the said  *  *  *  district court, being fully advised in the premises and satisfied of the propriety and the necessity therefor, duly made and entered its order as follows: 'That the necessity for collecting the full amount of the statutory stockholders' liability fully appearing, Stephen H. Lynch, as receiver in the above-entitled cause, is hereby authorized and

directed to notify the stockholders of the Merchants' Bank that the full amount of their statutory stockholders' liability is now due and payable to him as such receiver, and that, unless same is paid within ten days after notice, suit will be instituted by said receiver to enforce collection of the same, and said receiver is further authorized and directed to institute and prosecute such suits pursuant to the terms of said notice as may be necessary and appropriate, whether in the state of Utah or elsewhere, and to incur such expense and employ such counsel as may be necessary and expedient.' That the plaintiff brings and prosecutes this action pursuant to the said order and authorization and in the discharge of his duties as receiver, as provided in chapter 25, Session Laws of Utah 1911.'' That the plaintiff had duly notified the defendant that the full amount of his additional liability was due and payable, etc. That the defendant had failed to pay, and that the whole amount of his additional liability, to wit, the sum of $500, is due, for which amount he prayed judgment.

To this complaint the defendant demurred: (1) That the facts stated do not constitute a cause of action against the defendant; (2) that the complaint is uncertain and ambiguous (stating various particulars wherein it is so) ; (3) that the plaintiff has not legal capacity to sue, for the reason, among others, that the right of action is in the creditors of the bank and not in plaintiff as receiver; (4) that there is a defect of parties, in that the other stockholders are necessary parties to the action and are not made so; and (5) that the act authorizing the receiver to maintain an action to enforce the stockholders' additional liability is unconstitutional and therefore void for the reasons stated in the demurrer, and which will hereinafter more specifically be referred to

The district court sustained the special demurrer, upon the sole ground, however, that the act authorizing the receiver to sue the stockholders and recover from them the additional liability is void because the stockholders are liable to the creditors of the bank only for the additional liability imposed by the Constitution.

The plaintiff elected to stand upon his complaint, and the

district court entered judgment dismissing the action, from which order plaintiff appeals, assigning the ruling of the court before referred to as erroneous upon various grounds.

We remark that, in view that the sufficiency of the complaint is attacked generally, and as counsel for both parties have requested it, we shall dispose of all the legal questions that are necessarily raised by the demurrer. We deem it more convenient, however, to consider the constitutional ground of the demurrer first.

Our Constitution, art. 12, section 18, provides:

"The stockholders in every corporation, and joint-stock association for banking purposes, in addition to the amount of capital stock subscribed and fully paid by them shall be individually responsible for an additional amount equal to the amount of their stock in such corporation for all its debts and liabilities of every kind."

The foregoing constitutional provision was incorporated into the Revised Statutes of 1898, as section 382 of that revision, in the exact language as it was adopted in the Constitution except that in the last line the word "its" is omitted from the statute. Section 382 was subsequently carried forward into Compiled Laws Utah 1907, in the precise language as it is copied into the Revised Statutes of 1898. In the Revised Statutes of 1898, in section 390, it was also provided:

"The secretary of state, upon becoming satisfied that any bank has become insolvent, or that its capital has become and is permitted to remain impaired, or that it has violated any provision of law, may, through the attorney general, apply to the district court, or a judge thereof, for the appointment of a receiver to take charge of and wind up the business of such bank."

That section was also carried forward into Compiled Laws Utah 1907.

It will be observed that nothing was said, either in the section as found in the Revised Statutes of 1898 or in Compiled Laws Utah, 1907, respecting the receiver's right to enforce the stockholders' additional liability.

The law remained in that condition until March, 1911, at which time the Legislature passed chapter 25, Laws Utah 1911, in which section 382 aforesaid is again copied in the

language of the Constitution, with the exception of the word "its" as before stated. That act (section 34) also provides for the appointment of a receiver in case a bank becomes insolvent or in case its capital is so impaired that it cannot comply with the conditions imposed by the act. Section 34 aforesaid, among other things, provides:

"The receiver, if any be appointed, shall, under the direction of the court, take possession of the books, records and assets of every description of such bank, collect all debts, dues and claims belonging to it, sell or compound all bad or doubtful assets, and sell all the real and personal property of such bank, on such terms as the court shall direct, *and may, if necessary to pay the debts of such bank, enforce all individual liabilities of the stockholders*, and shall make a report to the bank commissioner of all his acts and proceedings." (Italics ours.)

The italicized portion is in the language of the federal act authorizing the Comptroller of the Currency to proceed to recover the stockholders' additional liability. The same language is also used in many of the laws of the different states to which reference is made in the cases hereinafter cited.

We remark that neither in the constitutional provision nor in anything that is said in the Revised Statutes of Utah of 1898, nor in Compiled Laws Utah 1907, nor in the act of 1911, is there any intimation whatever with respect to what the nature of the proceedings shall be. Indeed, until chapter 25, supra, was passed in 1911 nothing had been said in either the Constitution or the statutes as to who should enforce the stockholders' additional liability. In chapter 25 it is, however, expressly provided that the receiver may do so

Before proceeding to a consideration of the various contentions urged on behalf of the defendant, we here insert certain propositions which, in our judgment, are supported by the great weight of the more recent decisions emanating from both state and federal courts. Those propositions may, for convenience, be stated thus:

(a) A provision like the one in our Constitution is self-executing. *Willis* v. *Mabon*, 48 Minn. 140, 50 N. W. 1110, 16 L. R. A. 281, 31 Am. St. Rep. 626 and cases there cited; Fletcher Ency. Corps. section 4143. To

the same effect are many of the decisions hereinafter cited on other propositions.

(b)   Where the Constitution or statute merely imposes or fixes the liability without providing how it shall be enforced, the bank's creditors may enforce it in an ordinary action either at law or in equity, and under such circumstances it seems that actions in equity have the preference.

(c)   In case the Constitution or the statute fixing the liability fails to determine by whom the liability may be enforced for the benefit of the creditors, the Legislature may at any time determine who may sue the stockholders and what the nature of the proceedings shall be. *Gardiner* v. *Bank of Napa,* 160 Cal. 577, 117 Pac. 667; *Wilson* v. *Book,* 13 Wash. 676-679, 43 Pac. 939; *Milroy* v. *Spurr Mountain Min. Co.,* 43 Mich. 231-238, 5 N. W. 287; *Howarth* v. *Lombard,* 175 Mass. 576, 56 N. E. 888, 49 L. R. A. 301; *Selig* v. *Hamilton,* 234 U. S. 652, 34 Sup. Ct. 926, 58 L. Ed. 1518, Ann. Cas. 1917A, 104; *Miners' Bank* v. *Snyder,* 100 Md. 57, 59 Atl. 707, 68 L. R. A. 312, 108 Am. St. Rep. 390.

(d)   Under a constitutional provision like ours, when authorized by statute as in section 34, chapter 25, Laws Utah 1911, the receiver who is appointed to take charge of an insolvent bank's assets and wind up its affairs is the proper person to bring actions to enforce the stockholders'. additional liability.   In many cases it is held that the bank examiner or bank commissioner, or other officer discharging similar duties, may bring an action if authorized by statute. *Hanson* v. *Soderberg* (Wash.) 177 Pac. 827; *Davis* v. *Johnson* (N. D.) 170 N. W. 520; *Collier* v. *Smith* (Tex. Civ. App.) 169 S. W. 1108; *Lamar* v. *Taylor,* 141 Ga. 227, 80 S. E. 1085; *Harris* v. *Taylor,* 148 Ga. 663, 98 S. E. 86; *Elson* v. *Wright,* 134 Iowa, 634, 112 N. W. 105.

(e)   Unless the statute (as is the case in Iowa) provides a different rule, the order or judgment of the court declaring the bank insolvent and adjudging that it is necessary to enforce the stockholders' additional liability to pay the bank's debts, in the absence of fraud or col-

lusion, is conclusive upon the stockholders, and they may not assail the same except in a direct proceeding. *Howarth* v. *Lombard*, 175 Mass. 570, 56 N. E. 888, 49 L. R. A. 301; *Converse* v. *Ayer*, 197 Mass. 443, 84 N. E. 98; *Straw & Ellsworth Co.* v. *Kilbourne, etc., Co.*, 80 Minn. 125, 83 N. W. 36; *London etc., Co.* v. *St. Paul P. I. Co.*, 84 Minn. 144, 86 N. W. 872; *Bernheimer* v. *Converse*, 206 U. S. 516, 27 Sup. Ct. 755, 51 L. Ed. 1163; *Sanger* v. *Upton*, 91 U. S. 56, 23 L. Ed. 220; *Hawkins* v. *Glenn*, 131 U. S. 319, 9 Sup. Ct. 739, 33 L. Ed. 184; *Austin* v. *Campbell* (Tex. Civ. App.) 210 S. W. 277; *Stringfellow* v. *Patterson* (Tex. Civ. App.) 192 S. W. 555.

(f)    The method of procedure to enforce the liability may be changed by the Legislature if such change does not enlarge or affect the liability of the stockholder in case the Constitution, as before stated, does not provide a method of procedure. *Western Nat. Bank* v. *Lawrence*, 117 Mich. 669, 76 N. W. 105; *Miners' Bank* v. *Snyder*, 100 Md. 57, 59 Atl. 707, 68 L. R. A. 312, 108 Am. St. Rep. 390; *Bernheimer* v. *Converse*, 206 U. S. 516, 27 Sup. Ct. 755, 51 L. Ed. 1163; *Henley* v. *Myers*, 215 U. S. 373, 30 Sup. Ct. 148, 54 L. Ed. 240.

(g)    Under constitutional and statutory provisions like ours it is not essential that all of the bank's assets be first exhausted before proceeding to enforce the stockholders' additional liability, where it is made apparent that the bank is insolvent.

We remark that in referring to the foregoing cases we do not wish to be understood as having exhausted the number that might be cited in support of any one of the propositions. In that connection we also desire to state that there are also decisions to the contrary upon nearly all of the foregoing propositions. In our judgment, however, the foregoing propositions are sustained by the great weight of modern authority.

Recurring, now, to our constitutional provision by which the stockholders' additional liability is imposed. It will be observed that the liability is couched in the most general terms. The liability that the Constitution imposes is a gen-

eral one, namely, that the stockholders ''shall be individually responsible for an additional amount equal to the amount of their stock in such corporation *for all its debts and liabilities of every kind.*'' (Italics ours.) It is too well settled to admit of controversy, although not always kept in mind by either courts or counsel, that where certain rights are granted or certain liabilities are imposed by state Constitutions, all that is intended thereby, unless otherwise expressed in the instrument itself, is that the Legislature is bound by the constitutional provision as written. In other words, such Constitutions are merely limitations upon the powers of the state Legislatures. If, therefore, the Constitution is silent respecting the remedy by which or through whom the right that is granted or the liability that is imposed shall be enforced, the Legislature possesses full power to provide such a remedy, provided it is adequate, to effectuate the purpose of the constitutional provision. In imposing the stockholders' additional liability the framers of our Constitution did not in the slightest degree limit the right of the Legislature to provide a remedy for its enforcement. That matter, like other remedies, was left entirely to the judgment of the Legislature. True, as before pointed out, the constitutional provision was self-executing, and, in view of that fact, the principle that is invoked by the courts is that in case a right is created and there is no special method provided for its enforcement the courts will enforce such right in accordance with     **8** some known remedy which can be made applicable. In the absence of any special remedy, therefore, the courts of this state would enforce the constitutional liability in accordance with some known remedy. That is precisely what this court held in the cases of *Steinke* v. *Loofbourow,* 17 Utah, 252, 54 Pac. 120, and *McLaughlin* v. *Kimball,* 20 Utah, 254, 58 Pac. 685, 77 Am. St. Rep. 908. As the law stood when those cases were decided no special remedy had been provided, and hence it was held that the right to enforce the stockholders' additional liability was not vested in the general receiver of the defunct bank, but was vested in the bank's creditors, and that the remedy must be sought in a court of equity. In the

case of *McLaughlin* v. *Kimball,* however, the court was careful to point out that the decision was based solely upon the fact that the Legislature had not provided a special remedy, and that to do so was within its power. Referring to that question the court said:

"Admitting that it would be a convenient and desirable remedy for the receiver of a corporation to collect for the creditors their dues from the stockholders, the relief is to be sought at the hands of the Legislature and not the court."

The Utah cases, therefore, do not support the contention of defendant's counsel that the right to sue the stockholders to recover the additional liability is exclusively vested in the creditors of the bank. Upon the contrary, the cases clearly recognize the doctrine stated in proposition (f), above set forth, and are in harmony with the cases cited in support of that proposition.

Counsel have, however, cited and specially rely upon the case of *Golden* v. *Cervenka,* 278 Ill. 409, 116 N. E. 273, in which the Supreme Court of Illinois held that the right to sue is exclusively vested in the bank's creditors. That decision, however, is based upon former decisions of the same court, and seems to be based upon the wording of Illinois Constitution, art. 11, section 6, which provides that the stockholders "shall be individually responsible and liable to its creditors"; that is, the bank's creditors. It is there held that the right to enforce the liability is a personal right vested in the creditors by the express terms of the Constitution. As already pointed out, however, our Constitution merely provides that the stockholders shall be liable for the "debts and liabilities" of the bank. That does not mean or imply that a stockholder may be sued to enforce that liability by any creditor at any time the bank fails or refuses to pay the creditor's demand.

While the right to sue is held to be in the bank's creditors in California, it was so held by virtue of a special statute, which provides that—

"Any creditor of the corporation may institute joint or several actions against any of its stockholders, for the proportion of his claim payable by each." Cal. Civ. Code, section 322.

. . .

The California Constitution imposes a liability quite similar to ours, and section 322 was passed as a means of enforcing that liability. No one, so far as we know, has ever questioned the right of the California Legislature to pass that section. In view, therefore, that our Constitution is silent respecting the enforcement of the liability, we can see no legal objection whatever to the right of the Legislature to pass an act for the speedy and economical enforcement of the liability for the benefit of all the bank's creditors.

It is, however, asserted that the funds derived from the stockholders' additional liability are no part of the assets of the bank and hence the general receiver of the bank is not authorized to receive or to administer them. It is cheerfully conceded that the stockholders' additional liability is not an asset of the defunct bank in the sense that that term is generally used and applied. The liability is, however, imposed as an additional security for the payment of the bank's debts and liabilities. The funds derived from the stockholders' additional liability must, therefore, be applied to the payment of the bank's debts.' That, however, may also be said with regard to the general assets of the bank. A perusal of that portion of section 34 of chapter 25 which we have quoted makes it quite clear to our minds that the receiver is not empowered to proceed to enforce the stockholders' additional liability merely by virtue of his office as receiver, but that he is specially authorized to do that if it is necessary to do so to pay the bank's debts and liabilities. If the general assets of the bank are sufficient to pay those debts, no authority is conferred on any one to enforce the additional liability, and none is necessary. It manifestly was the intention of the Legislature that the person who is appointed the general receiver of the bank, in case the general assets are insufficient to pay its debts, is by virtue of the act specially authorized to proceed to enforce the stockholders' additional liability for the purpose of paying the debts of the bank. He thus becomes the special agent or trustee for that purpose precisely as by virtue of his receivership he becomes the arm of the court to collect and to administer the bank's general assets under its orders and

direction, the only difference in that regard being that, while the receiver may by the court be permitted to use the general assets of the bank to pay the expenses of administering the affairs of the bank generally and to defray the costs of litigation incident to such administration, the funds derived from the additional liability, as expressed in the Constitution, must be applied in payment of the bank's "debts and liabilities." This fund may therefore not be squandered in litigation, and cannot be used for the purpose of defraying the general expenses of administering the affairs of the defunct bank, but may be used to defray such costs and expenses only as are necessarily incurred in the enforcement of the stockholders' additional liability. In collecting from the stockholder his proportion of what may be necessary to pay the bank's debts, not exceeding the amount fixed in the Constitution, the rights of the stockholder are certainly not only not invaded, but are strictly upheld. Again, requiring the stockholders to pay the full amount of their liability as fixed by the Constitution and to pay the same to the special agent or trustee aforesaid to the full extent contemplated by the Constitution and for the benefit of the creditors in no way invades or affects their rights.

The contention made by counsel that the right of enforcement of the stockholders' additional liability is exclusively vested in the bank's creditors would necessarily lead to this: That each creditor may exercise his choice regarding the stockholder he will sue. The creditor could thus compromise with a particular stockholder, or particular stockholders, for a consideration entirely outside of the constitutional liability, and thus one favored stockholder might be required to pay only a small percentage of his total liability to pay the bank's debts while other stockholders might be required to pay one hundred per cent. of their liability. Counsel, however, suggest that every creditor has the legal right to either sue or not sue as he may see fit; that he has the legal right to claim all or only a part of the debt owing to him by the bank, and that he may dispose of his claim as he may choose. No one disputes these propositions, and no one can successfully contend

that the rights referred to are invaded by the enforcement of the liability as herein suggested. No doubt any creditor of the bank may demand all or only a part of his claim. This, however, is precisely what he may do under the law as it now stands and as we have herein construed it. Will it be contended that any creditor may sue any stockholder without first establishing whatever claim such creditor may have or prefer as constituting a valid indebtedness against the bank? If that be once conceded, does it not inevitably follow that the bank is deprived of its right to interpose any legal defense it may have against the claim preferred by the creditor, and that the stockholder, who knows nothing concerning the transactions between the bank and the claimant, must at his peril defend for the bank? Surely no such incongruity could have been contemplated by the framers of the Constitution.

We think it is manifest that under our Constitution the bank's creditors must establish their claims against the bank in the proceeding pointed out by the law, and that the bank must be given an opportunity to interpose any defense it may have, and that it is only after the bank's debts have thus been established that the stockholders' additional liability may be enforced. If each creditor may sue at any time in any court any stockholder he may elect of whom the court may obtain jurisdiction the ultimate result must be anything but logical, economical, or speedy. We think the state has an interest in these matters, and that by virtue of that interest, when not limited by the Constitution, it may provide a special remedy to enforce the stockholders' additional liability if that be found necessary to pay the bank's debts.

We are also of the opinion that the remedy provided in section 34 of chapter 25, supra, is adequate, economical, and speedy, and in no way contravenes anything that is said or implied in our Constitution. In case no remedy is provided by the Constitution and that instrument merely creates a general liability, the great weight of authority is to the effect that the Legislature may not only provide a remedy, but may change the remedy from time to time. Such is the effect of the conclusion of the Supreme Court of the United States. In

the case of *Bernheimer* v. *Converse,* 206 U. S. 516, 27 Sup. Ct.
755, 51 L. Ed. 1163, Mr. Justice DAY, in speaking for the
court, in the course of the opinion, says:

"It may be regarded as settled that upon acquiring stock the
stockholder incurred an obligation arising from the constitutional
provision, contractual in its nature, and, as such, capable of being
enforced in the courts, not only of that state, but of another state
and of the United States, *Whitman, etc.,* v. *Bank,* 176 U. S. 559 (20
Sup. Ct. 477, 44 L. Ed. 587), although the obligation is not entirely
contractual and springs primarily from the law creating the obli-
gation. *Christopher* v. *Norvell,* 201 U. S. 216 (26 Sup. Ct. 502, 50
L. Ed. 732, 5 Ann. Cas. 740.)

"Is there anything in the obligation of this contract which is
impaired by subsequent legislation as to the remedy enacting new
means of making the liability more effectual? The obligation of
this contract binds the stockholder to pay to the creditors of the
corporation an amount sufficient to pay the debts of the corpora-
tion which its assets will not pay, up to an amount equal to the
stock held by each shareholder. That is his contract, and the
duty which the statute imposes, and that is his obligation. Any
statute which took away the benefit of such contract or obligation
would be void as to the creditor, and any attempt to increase the
obligation beyond that incurred by the stockholder would fall
within the prohibition of the Constitution. But there was nothing
in the laws of Minnesota undertaking to make effectual the con-
stitutional provision to which we have referred, preventing the
Legislature from giving additional remedies to make the obli-
gation of the stockholder effectual, so long as his original under-
taking was not enlarged. There is a broad distinction between
laws impairing the obligation of contracts and those which simply
undertake to give a more efficient remedy to enforce a contract
already made.

"This principle was stated by Mr. Chief Justice Marshall in
*Sturges* v. *Crowninshield,* 4 Wheat. 122 (4 L. Ed. 529), as follows:

" 'The distinction between the obligation of a contract and a
remedy given by the Legislature to enforce that obligation exists
in the nature of things, and, without impairing the obligation of
the contract, the remedy may certainly be modified as the wisdom
of the nation may direct.' "

There are numerous other cases, emanating from both state
and federal courts, announcing the same doctrine, many of
which are cited in support of some of the several propositions
we have hereinbefore stated.

It is, however, further contended that section 34 of

chapter 25 merely authorizes the receiver to collect the bank's general assets. If the contention were not urged by counsel of whose ability we entertain the highest regard, we should hardly deem it of sufficient importance to merit special reference thereto. A mere cursory reading of section 34, supra, clearly shows that the Legislature intended to and did refer to both the general assets and to the stockholders' additional liability imposed by the Constitution, and that the authority to enforce the latter was conferred only in case it was necessary to pay all of the bank's debts. If the general assets are sufficient for that purpose, no authority is vested in any one to enforce the additional liability. The section, therefore, cannot be construed as counsel contend. While it is true that counsel's contention prevailed in the case of *Williams* v. *Carver,* 171 Cal. 658, 154 Pac. 472, it is equally true that such a construction was forced upon the Supreme Court of California in view of an existing statute. That court, therefore, was compelled to apply the familiar doctrine that where conflicting provisions exist the effect of the language must at times be restricted or enlarged in order to harmonize and give effect to all of the conflicting provisions if such a course is permissible. That is precisely what the Supreme Court of California did in deciding the case of *Williams* v. *Carver,* supra. Such a dilemma is not presented to us here. We are required, however, to give force and effect to all that is said in section 34 of chapter 25, and if we do that no other construction is permissible than the one we have given it.

It is also contended that section 34 of chapter 25 is invalid for the reason that the subject-matter thereof is not expressed in the title of the act, and that it is not clearly expressed therein as provided by our Constitution. This court is now irrevocably committed to the doctrine that a legislative act may not be stricken down upon the alleged ground that it is unconstitutional, unless it is clearly and palpably so. *Marioneaux* v. *Cutler,* 32 Utah, 475, 91 Pac. 355, where the cases are collated and reviewed. To the same effect are *Edler* v. *Edwards,* 34 Utah, 13, 95 Pac. 367; *State* v. *Cand-*

*land,* 36 Utah, 406, 104 Pac. 255, 24 L. R. A. (N. S.) 1260, 140
Am. St. Rep. 834, and *Salt Lake City* v. *Wilson,* 46 Utah, 60,
148 Pac. 1104. It would largely be a work of supererogation
to enter again upon a discussion of the question just stated
and decided in those cases. It is true that the Supreme Court
of California, in *Williams* v. *Carver,* supra, held that the title
to the California banking act was insufficient, but the holding
in that case was based upon a title which was very much re-
stricted. The title there in question reads: "An Act to De-
fine and Regulate the Business of Banking." Session Laws,
Cal. 1909, p. 87. The court seemingly gave little or no force
to the word "regulate." Be that as it may, however, the title
to chapter 25 is much more comprehensive than was the title
to the California act. Instead of comprising only ten words,
as was the case in the California act, the title to chapter 25
contains more than one hundred and fifty words. While the
number of words is not necessarily controlling, yet the words
must all be given their ordinary meaning, and if that be done
the title to chapter 25 is sufficient to indicate the subject-mat-
ter of the whole act.

Nor does section 34 constitute a separate and distinct sub-
ject within the constitutional provision. It is also well
settled, as pointed out in *Marioncaux* v. *Cutler,* supra,     **13**
that a title may be so restricted as to prevent matters
which under a more comprehensive title might well be in-
cluded in the act from being included therein because of the
restricted character of the title.

In any event, however, the title to chapter 25 is not so
clearly defective as to authorize us to declare the act invalid
for the reason stated.

It is also vigorously urged that the complaint is insufficient
because it contains no allegation that it is necessary to enforce
the stockholders' additional liability. The allegation of the
complaint in that regard is that the bank is "hopelessly in-
solvent, and its assets were and are insufficient to pay its debts
and liabilities, and in order to pay the same it is necessary to
collect the full and entire amount of the statutory stockhold-
ers' liability," etc. That allegation is supplemented by a

statement that the district court, in a certain proceeding and upon due notice and evidence, had found and had entered an order or judgment that it was necessary to collect the full amount of the stockholders' additional liability in order to pay the debts of the bank. These allegations, it seems to us, are quite sufficient to meet counsel's objections. They, however, insist that the order or judgment is without force or effect because the court was not authorized to make such an order or to enter such a judgment. That contention, to say the least, is somewhat remarkable. How is the question whether the general assets of the bank are sufficient or insufficient to pay its debts to be determined except in a judicial proceeding? How can any one know the amount of the bank's debts or who are its creditors unless those questions are judicially determined? In every case where it becomes necessary to wind up a bank's affairs upon the ground of insolvency the amount of its liabilities, as well as the extent of its assets and who are its creditors, must be determined by a court having jurisdiction of the proceedings. In **14** view of the allegations in the complaint that the district court, upon a hearing "regularly noticed and had and evidence duly presented," found that the full amount of the statutory liability was necessary to pay the bank's debts, we must assume that that is precisely what was done in this case. That order or judgment as we shall see, is binding upon the stockholders, and of necessity must be so upon all creditors who presented their claims. That such is the law there is little if any room for doubt.

In the case of *Howarth* v. *Lombard,* supra, in referring to the effect to be given to the order or judgment in which the necessity of enforcing the stockholders' additional liability is determined, it is said:

"The ascertainment is like a common case of a judgment against a corporation which is binding on stockholders. The members of such corporations, as well as the corporations themselves, are within the jurisdiction of the local court so far as is necessary for the determination of the rights and liabilities of the corporation and its members among themselves. In reference to this kind of liability such decisions and orders are binding on stock-

holders who are not before the court otherwise than by virtue of their membership in the corporation. *Elderkin* v. *Peterson*, 8 Wash. 674 (36 Pac. 1089); *Hawkins* v. *Glenn*, 131 U. S. 319 (9 Sup. Ct. 739, 33 L. Ed. 184); *Great Western Telegraph Co.* v. *Purdy*, 162 U. S. 329, 336 (16 Sup. Ct. 810, 40 L. Ed. 986); *Glenn* v. *Liggett*, 135 U. S. 533 (10 Sup. Ct. 867, 34 L. Ed. 262); *Sanger* v. *Upton*, 91 U. S. 56, 58 (23 L. Ed. 220); *Marson* v. *Deither*, 49 Minn. 423 (52 N. W. 38); *Lewis* v. *Glenn*, 84 Va. 947, 979 (6 S. E. 866); *Hamilton* v. *Glenn*, 85 Va. 901 (9 S. E. 129); *Glenn* v. *Williams*, 60 Md. 93, 116."

In *Sanger* v. *Upton*, supra, the Supreme Court of the United States, in referring to the question, held that in contemplation of law every stockholder is "before the court in all proceedings touching the corporation," and thus he must be deemed to have been before the court in the proceedings wherein the liability of the bank is ascertained and fixed and in which the indebtedness of the bank is determined. Any other conclusion would necessarily lead to interminable litigation. If, however, the stockholders are "before the court" in such a proceeding and are bound thereby, it would seem that they should likewise have the right to directly attack the order or judgment for fraud or collusion, etc., and have it set aside. See 2 Black, Judgments, section 583. The attack must, however, be made directly and at the proper time and in the proper manner, and not collaterally by each stockholder when he is sued to recover the additional liability. If the right to assail the order or judgment directly for fraud, etc., is given to the stockholders they are deprived of no legal rights. Moreover, such an attack would be regular, orderly, and expeditious, while to permit each stockholder to assail such an order or judgment in the action in which his additional liability is sought to be enforced might lead to most incongruous results. Of course, any stockholder may set up any facts which show he is not liable.

In this connection it is also important to keep in mind that it is not necessary to exhaust and apply all of the general assets of the bank before proceeding to the enforcement of the stockholders' additional liability, in case it is made to appear that the funds to be derived from that liability are necessary to pay the bank's indebtedness. In referring to that subject

the Supreme Court of Mississippi, in *Pate* v. *Bank of Newton*, 116 Miss. 666, 77 South. 601, which is a recent case, decided in February, 1918, in the course of the opinion, said:

"There is no requirement to await a collection and application of the debts and property of the bank before bringing this suit against the stockholders. In many cases it would require a considerable period of time to collect the debts and dispose of all the personal and real estate belonging to a bank, even though it might be perfectly manifest that when this is done there would still be a large deficit due to the depositors. If the bank or its liquidators were required to await until the debts had been collected and the assets converted into cash, many of the stockholders might escape liability by becoming insolvent or moving out of the jurisdiction of the court. When the stockholders pay this liability into the bank and it is applied to the satisfaction of the depositors' claims, and after the debts of the bank are paid, if there were any funds left the stockholder would naturally secure this remainder as a stockholder of the bank; and, of course, a stockholder who had paid the liability would first be repaid before any stockholder who had not paid such liability would be entitled to any dividend from the proceeds of the bank. We therefore think that the suit can be maintained whenever it is reasonably apparent that the assets of the bank will not pay the depositors."

Other courts have expressed the same thought in different language. A moment's reflection should convince that the reasons are practical, sound, and salutary. Why, in case a bank is hopelessly insolvent and cannot pay its debts, should its creditors be obliged to wait the slow process of converting all of the general assets of the bank into cash before calling upon the stockholders' additional liability to pay the debts which they are obligated to pay? If such a course be pursued it must often result in sacrificing valuable assets by too hastily converting them into cash. It is for the best interests of all stockholders that the assets of the bank be converted into cash at the best price obtainable therefor, and as nearly for their actual value as the conditions and circumstances will permit. It is not possible to do that if all of the assets are converted into money within a short or limited time. Again, any amount of money that is left after the debts are paid must by the receiver be distributed among the stockholders. Those who have paid their additional liability must, as a mat-

ter of course, be preferred to those who have not paid up or only partly paid. In case, therefore, where it is manifest that a bank is insolvent it is to the best interests of all concerned that its debts be paid at as early a date as possible, and that the assets of the bank be not unnecessarily and unreasonably sacrificed by a forced conversion into cash at any price. The courts should exercise their full power in safeguarding, preserving, and protecting the rights of all the interested parties, stockholders as well as creditors, and require the receiver to proceed with reasonable expedition, but with fairness and justice to all. If such be done the method or nature of the proceedings to collect the stockholders' additional liability becomes of secondary importance. It therefore seems to us quite needless to waste time or energy respecting what the character or nature of the proceedings should be so long as the rights and interests of both the creditors and stockholders are preserved and protected. Moreover, this court has repeatedly held that under our Constitution all forms of action are abolished. That instrument explicitly directs, "There shall be but one form of civil action and law and equity may be administered in the same action." Why, then, longer quibble about what the form or nature of an action shall be? Under the foregoing constitutional provision the only question that should arise in any case is what relief, and the extent thereof, the complaining party may be entitled to under the law when applied to the conceded or established facts in the case. True, there are still equitable as contradistinguished from legal rights and remedies. Neither the rights nor the relief to which the litigants may be entitled, however, depend upon the form or nature of the action, but are entirely dependent upon the nature or character of the facts and the law applicable thereto. In this case, therefore, we see no reason whatever why, as a matter of economy and convenience if for no other reason, the receiver may not sue as many of the stockholders in one and the same action as may be most convenient for all concerned. Nor do we see why he should not sue all the stockholders in one action if he can obtain legal service upon them or if they voluntarily appear. Nor do

we see why a stockholder, in case he is sued separately, may not ask that his case be heard in connection with other cases in case such a course would not prejudice the rights of others. We can well understand that, in view that there may be stockholders who have defenses that are not common to all stockholders, such stockholders may desire to try their cases separately. That, it seems to us, however, is no reason why all the stockholders within the jurisdiction of the court may not be sued in one action. If it should appear that they might, or some of them might, be prejudiced by a joint trial, the court should grant them separate trials or hearings. All that may be done in conformity with our procedure and without sacrificing the rights or interests of any one. Nor should such a course prevent any stockholder from appealing to this court separately. We are of the opinion, therefore, that the defendant's contention that he, as a matter of right, may demand to be sued jointly with all other stockholders, or that any stockholder may, as a matter of right demand to be sued separately, or that he may only be sued by a creditor or by several creditors is not well founded. Each stockholder may, however, have his rights protected as hereinbefore stated.

We remark that we perhaps have dwelt upon certain phases of the case longer than seems necessary. In view, however, that there are a large number of other actions pending in different courts and before different judges, we have deemed it best to state our reasons fully and in detail, to avoid, if possible, further delays and unnecessary litigation.

The judgment of the district court of Juab county is therefore reversed, and the cause is remanded to that court, with directions to overrule both the general and special demurrers, to permit the defendant to answer the complaint, and to set up such legal defenses as he may have, and to proceed with the case in accordance with the views herein expressed. Defendant to pay costs of this appeal.

CORFMAN, C. J., and GIDEON, and THURMAN, JJ., concur.

WEBER, J., being disqualified, did not participate herein.