SNEVE, Respondent, v. HAGEN, et al, Appellants.

(250 N. W. 27.)

(File No. 7470. Opinion filed September 19, 1933.)

*Orvis & French,* of Yankton, for Appellants.

*Krause & Krause,* of Dell Rapids, for Respondent.

WARREN, J. Respondent, Sneve, was a deposit creditor of the Citizens' State Bank of Irene, S. D. The appellants, Hagen and Peterson, were stockholders in the bank, Hagen in the sum of sixty-six shares and Peterson in the sum of sixteen shares of the capital stock, par value of $100 per share. The respondent's deposits were in the form of a checking and deposit account for some $133, the balance being in certificates of deposit dated from April 14, 1926, to August 18, 1926, bearing interest at 5 per centum per annum, aggregating some $1,200. The bank suspended business and was taken in charge by the superintendent of state banks for the purpose of liquidation in November, 1926. Some time thereafter the required 80 per cent of the credit depositors in said bank executed a plan to reorganize and to that end waived 70 per cent of all their claims. Respondent protested and objected to the reorganization of the bank and did not consent to waive his claims.

The circuit court at the hearing upon the order to show cause for a reorganization of the bank held that the non-consenting de-

positors of said bank had failed to show sufficient cause why said bank should not be reinstated, and thereafter said bank under the order and under the supervision of the superintendent of state banks was reopened as a solvent corporation. Respondent demanded the superintendent of banks to bring action against the stockholders, including the two appellants herein, and upon his refusal to bring action to enforce the stockholders' liability the respondent brought the present action to recover the amount of his deposits at the time of the suspension of the said bank. The court after trial on all of the issues made findings, conclusions, and a judgment in favor of respondent for the sum of $1,769.79 against appellant Hagen and $1,600 against appellant Peterson. The appellants appealed from said judgment, assigning as error certain findings and conclusions wherein the court found for respondent, and argue that the agreement drawn up among the 80 per cent of the stockholders, consented to by the superintendent of banks, made it binding upon the nonconsenting deposit creditors. That in said agreement the stockholders were permitted to and did buy new stock in the reorganized concern equal to the amount of the capital stock that they owned in the insolvent bank and also surrendered their stock certificates. The appellants further argue that novation took place and that appellants by purchasing the stock in the new organization were freed from all liability to the respondent as that was part of the agreement. A portion of the agreement in support of their contention reads as follows:

"As a part of this re-organization the stockholders of the Citizens State Bank of Irene, South Dakota, hereby agree to surrender their stock, which stock together with all surplus shall be placed in the trust fund to offset any loss that might occur in the assets of said trust fund of the Citizens State Bank of Irene, South Dakota.

"It is further agreed that the old stockholders must take stock in the new re-organized Citizens State Bank, Irene, S. D., in lieu of their liability."

It is contended by appellants that this agreement released them from liability to the respondent herein and that it conformed to chapter 104, page 92, 1925 S. D. Session Laws, which reads as follows: "Section 1. When any banking corporation organized under the laws of this state shall for any reason become suspended

and be taken in charge by the Superintendent of Banks or by his Examiner in Charge or other liquidating agent pursuant to law, the said Superintendent of Banks may in his discretion permit the re-instatement of such Bank as a solvent corporation by having a re-organization plan and articles of agreement executed in writing by deposit creditors thereof representing eighty per cent of the amount of deposits of such bank, to be determined as of the date of suspension, and all other depositors shall be held to be subject to such agreement and all and every term thereof to the same extent and with like effect as if they had joined in the execution thereof, and their claims shall be treated in all respects as if they had joined in the execution of the articles of re-organization in the event the said bank is restored to solvency and re-opened for business."

The facts also disclose that the deposits were made after the chapter just quoted took effect. The constitutionality of this chapter is questioned by the respondent, or rather what was attempted to be done by the depositors and the superintendent of banks under the presumed power of said chapter. A consideration of section 3, of article 18, of our Constitution is necessary and which reads as follows: "§ 3. The shareholders or stockholders of any banking corporation shall be held individually responsible and liable for all contracts, debts and engagements of such corporation to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares or stock; and such individual liability shall continue for one year after any transfer or sale of stock by any stockholder or stockholders."

Section 3 of article 18 received careful and close consideration by this court in Smith v. Olson, 50 S. D. 81, 208 N. W. 585, and again in Bush v. Lien, 57 S. D. 501, 234 N. W. 29, 31. The appellants and respondent both attempt to interpret what this court said in Bush v. Lien, the respondent contending that it is decisive of the questions herein involved, while appellants try to distinguish and argue that it is not applicable. A consideration of Bush v. Lien and the briefs which were before the court at the time when it was being considered lead us to believe that the respondent's contention is correct. Bush v. Lien, supra, is decisive of the status of the appellants herein. What we said therein as to the agreement is equally applicable to the agreement before us.

It cannot be said that the agreement to take stock in the newly reorganized Citizens' State Bank of Irene, S. D., in lieu of their liability, meant the freeing of the appellants from the constitutional liability. The constitutional liability fixed by section 3 of article 18 is quite plain, and an interpretation of chapter 104 leads us to believe that it was not the intention of the framers thereof to give such broad powers as to permit 80 per cent of creditors and the shareholders or stockholders to enter into an agreement whereby they would take shares of stock in the reorganized bank equal to the amount of stock they had in the suspended bank and thereby be relieved of all liability. It is inconceivable that such was the intention.

Upon the face of the record in this case, we have stockholders (the appellants) whose insolvency is not questioned, being permitted to take stock in the new reorganization and their liability as stockholders in the suspended bank canceled. The superintendent of banks did thus attempt to permit the appellants to be relieved of liability. What we said in Bush v. Lien, supra, is controlling upon this phase of the situation: "And creditors who do not consent cannot be compelled to release claims against solvent persons because those claims are also claims against an insolvent. The validity of the reorganization agreement binding nonassenting creditors rests upon the assumption that it is a step in insolvency whereby the insolvent is permitted to make a composition with its creditors. It would not be valid if it compelled such creditors to release their claim against solvent persons who could pay them in full."

A further analysis of chapter 104, 1925 S. D. Session Laws, reveals the fact that the superintendent of banks may in his discretion permit the reinstatement of any suspended bank as a solvent corporation by having a reorganization plan and articles of agreement executed in writing by deposit creditors thereof representing 80 per cent of the amounts of deposit as of the date of suspension and the further provision that all other depositors shall be subject to such agreement. The statute is entirely silent as to how the capital shall be secured and paid; there is nothing definite pertaining to the reorganization plans and articles of agreement. Can it be said that the superintendent of banks has such power that he may relieve stockholders of their constitutional liability in the sus-

pended bank simply by formulating an agreement agreed to by 80 per cent of the creditors and approved by the court that the stockholders will be permitted to take stock in the reorganized bank equal to the amount of their liability, and thereby absolve themselves from their constitutional liability? If that is permitted it will deprive the nonconsenting creditors and depositors of participating in a fund to be paid in by the stockholders as a liability according to our Constitution, § 3, art. 18. We are unable to understand that the superintendent of banks has such high power. Clearly it cannot be said that the framers of chapter 104 of the 1925 S. D. Session Laws intended to say that the superintendent of banks migh arrange with stockholders to subscribe for stock in the reorganized bank and thereby cancel their constitutional liability. We are unable to so interpret the reorganization statute. True the statute is general and broad, but such cannot be the fair inference conveyed by the express provision therein contained.

To say that chapter 104 may be interpreted as permitting the superintendent of banks and 80 per cent of the creditors to enter into an agreement to relieve a stockholder of his liability under section 3, article 18, of our Constitution, is going further than was ever intended. To hold that because the superintendent of banks is a fair and impartial custodian provided by the laws of this state and that in his administration of closed banks he may permit such an agreement in the exercise of his best judgment as to what is for the best interest of all parties concerned in the bank, its creditors and stockholders, is going further than the reading of the statute warrants. When the depositors made their deposits in the bank, they had the right to assume that in addition to the assets and property of the bank there was the constitutional liability of all the stockholders. Chapter 104 is not susceptible to the construction advanced by the appellants that by the stockholders surrendering their stock and paying a like amount into the reorganization that would relieve them of the stockholder's liability. To so hold would require that we hold that respondent's deposits and property rights therein could be appropriated by the superintendent of banks and 80 per cent of the creditors without the consent of the nonconsenting depositors and without just compensation. It cannot be conceded that the agreement canceled the stockholders' liability and deprived the nonconsenting creditor of apply-

ing the stockholders' liability upon his claims. That such was the intention of the framers of chapter 104, 1925 S. D. Session Laws, is not maintainable. The fact that it is desirable to reorganize a bank and that by the paying in of the stockholders' liability into and for the purpose of reorganizing the bank in a community does not warrant the taking of the property of a nonconsenting depositor and depriving him of recovering or participating in the funds to be derived from the stockholders' liability, without just compensation. While it may be laudable to reorganize closed banks and put them on a solvent basis, yet the framers of our laws never intended that that should be accomplished at the expense of the nonconsenting creditor and thus deprive him of participating in the funds to be derived from stockholders' liability. Under the views we have hereinbefore expressed it will necessarily appear that the argument advanced by appellants that when the agreement was entered into it amounted to an accomplished novation is not supported by the facts as found by the court and does not meet the requirements necessary to constitute "novation" as defined by courts construing statutes on novation similar to ours.

The order and judgment appealed from are affirmed.

POLLEY, J., concurs.

RUDOLPH, P. J., dissents.

CAMPBELL, J. (concurring specially). The right of bank creditors to look to stockholders to the extent of the amount of the par value of their stock is embedded in the Constitution of this state. Article 18, § 3. The liability thus imposed upon stockholders is direct and primary and cannot be varied or diminished by legislative act. Smith v. Olson, 50 S. D. 81, 208 N. W. 585. The liability is not an asset of the bank and the bank can neither collect, compromise, nor release it. Smith v. Goldsmith, 50 S. D. 1, 207 N. W. 977; Farmers' State Bank v. Erickson, 54 S. D. 345, 223 N. W. 306. It is doubtless competent for the Legislature, within certain limits, to prescribe a method of procedure for the enforcement of such liability in the case of a closed bank. By section 8937, Rev. Code 1919, the superintendent of banks is authorized in the case of a closed bank to bring action to enforce stockholders' liability, and the individual creditor, who would otherwise be entitled to bring such action, is forbidden to commence the same unless the superintendent of banks refuses to do so. In

other words, the superintendent of banks is authorized to make the collection of the stockholders' liability in behalf of the creditors entitled thereto. This does not amount to an unconstitutional impairment of the creditor's rights. Smith v. Olson, supra. Cf. also Lynch v. Jacobsen, 55 Utah, 129, 184 P. 929; McClaren v. Anderson, 110 W. Va. 380, 158 S. E. 379. In the absence of specific statute the superintendent of banks would have no authority to make this collection for creditors. Barret v. Skalsky, 118 Kan. 162, 233 P. 1043. There is nothing in our statute, however, which authorizes, or purports to authorize, either the superintendent of banks or the circuit court in charge of the liquidation of a failed bank, to compromise or release stockholders' liability or to substitute anything else therefor, or to accept anything less than full payment in satisfaction thereof. I very much doubt whether any such power could constitutionally be extended to the superintendent of banks or to the circuit court. In any event, the statute has made no attempt to give them such power. The statutory power granted to the superintendent of banks in liquidation by section 8928, Rev. Code 1919, to compound bad or doubtful debts, has no application whatever to stockholders' liability, since the statute refers to debts due the bank, and the stockholders' liability is not and never was in any sense due to the bank.

I am therefore of the opinion that as against nonconsenting creditors neither the superintendent of banks nor the circuit court had any authority, as part of a reorganization scheme or otherwise, to compromise or release the constitutional stockholders' liability or to substitute any payment to the reorganized bank in place of it, conceding that by the reorganization agreement in this case they probably attempted so to do. Upon these considerations I concur in the result arrived at in the foregoing opinion.

ROBERTS, J. (concurring specially). In its facts and applicable law, this case does not differ from Bush v. Lien, 57 S. D. 501, 234 N. W. 29. The reorganized bank assumed only a portion of the liabilities of the suspended bank. The assets retained by the reorganized bank may have equaled or exceeded the amount of the liabilities assumed, and a recapitalization of the bank in fact may have resulted. At least we are not to presume that the superintendent of banks permitted a reinstatement of the bank with impaired capital. It does not appear from the findings of the

trial court that the amount paid by the defendants was to satisfy or offset any portion of the claims against the bank. I therefore concur in an affirmance of the judgment.